UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
NEWARK DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ALEXANDRE J. DACOSTA, and | ) | Case No. 2:22-bk-18303-JKS |
| VIVIANNE C. ANTUNES, | ) | |
| | ) | Chapter 11 |
| Debtors. | ) | Subchapter V |
| | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |
| AUTOMOTIVE FINANCE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adversary No. |
| | ) | |
| ALEXANDRE J. DACOSTA, and | ) | |
| VIVIANNE C. ANTUNES, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY
OF DEBT PURSUANT TO 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 523(a)(6)**

Automotive Finance Corporation ("AFC"), by counsel and pursuant to 11 U.S.C. §§ 523(a)(2), 523(a)(4) and 523(a)(6), and Rule 7001 of the Federal Rules of Bankruptcy Procedure, for its Complaint against Alexandre J. Dacosta ("Dacosta") and Vivianne C. Antunes ("Antunes," and together with Dacosta the "Defendants"), states as follows:

**PARTIES**

1.      On October 19, 2022 (the "Petition Date"), the Defendants filed a joint petition under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. On December 20, 2022, the Chapter 13 case was converted to one under Subchapter V of Chapter 11.

2.      The deadline to file complaints to determine the dischargeability of debts in the Defendant's Chapter 11 case is January 17, 2023, which date has not yet passed.

3.      Dacosta is an individual and, upon information and belief, a resident of New Jersey.

4.      Antunes is an individual and, upon information and belief, a resident of New Jersey.

5.      AFC is an Indiana corporation, and a creditor of the Defendants.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

7.      Venue of this proceeding is proper in this District pursuant to 28 U.S.C. § 1409.

8.      This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2).

9.      AFC consents to entry of final judgments and orders in this adversary proceeding.

## FACTS APPLICABLE TO ALL COUNTS

10.      At all times relevant herein, Antunes was the manager and/or member of BAV Auto L.L.C. d/b/a Costas Auto Gallery ("BAV"), a New Jersey limited liability company.

11.      At all relevant times herein, Antunes personally and actively participated in the management of BAV, including the disposition of inventory and management of BAV's financial affairs.

12.      At all times relevant herein, Dacosta was the operations manager of BAV.

13.      At all relevant times herein, Dacosta personally and actively participated in the management of BAV, including the disposition of inventory and management of BAV's financial affairs.

14.     On or about January 9, 2019, Antunes, as manager and/or member of BAV, and Dacosta, as guarantor, executed a Demand Promissory Note and Security Agreement (as amended or modified from time to time, the "Note"), pursuant to which BAV promised to pay AFC $450,000.00, or such greater or lesser principal amount as may be advanced by AFC pursuant thereto, together with interest. A true and accurate copy of the Note is attached as **Exhibit 1**.

15.     Under the terms of the Note and to secure BAV's present and future obligations to AFC under that note and any other instrument, guaranty, or other document, BAV granted AFC a security interest in substantially all of its assets, including inventory, then owned or thereafter acquired.

16.     Under the terms of the Note and to secure BAV's present and future obligations to AFC under that note and any other instrument, guaranty, or other document, BAV also granted AFC a purchase money security interest in all vehicles, parts, and equipment financed by AFC thereunder.

17.     On or about January 9, 2019, each of the Defendants executed an Unconditional and Continuing Guaranty pursuant to which they guaranteed the full and prompt payment of all obligations of BAV to AFC under the Note and any other agreement, as amended, supplemented, or modified. A true and accurate copy of the Guaranty is attached to the Note as Exhibit C.

18.     AFC properly perfected and maintained its security interests in the assets of BAV by making the appropriate UCC filings with the UCC Section of the Department of Revenue for the State of New Jersey. True and accurate copies of AFC's UCC filings are attached as **Exhibit 2**.

19.     Prior to the Petition Date, through or at the direction of the Defendants, BAV requested that AFC advance it money and/or extend it credit under the Note to finance vehicle inventory, and AFC in fact advanced money to BAV and/or extended BAV credit under the Note for that purpose.

20.     Prior to the Petition Date, BAV did not pay all amounts due and owing to AFC in accordance with the terms of the Note, and BAV was and is in default thereunder.

21.     Pursuant to the Note, AFC is entitled to attorneys' fees, costs, and expenses incurred collecting and enforcing the obligations under the Note, including the fees and expenses incurred in this proceeding.

22.     AFC has been required to hire attorneys to collect and enforce the obligations under the Note, and to commence and pursue this proceeding.

23.     AFC has incurred attorneys' fees, costs, and expenses collecting and enforcing the obligations under the Note, including the fees and expenses incurred in this proceeding.

24.     Dacosta is personally liable for the representations, acts, and omissions of material fact that he made or directed to be made to AFC that are set forth herein.

25.     Antunes is personally liable for the representations, acts, and omissions of material fact that she made or directed to be made to AFC that are set forth herein.

**COUNT I: Nondischargeability Under 11 U.S.C. § 523(a)(6) as a Result of the Sale of the Secured Vehicles Out of Trust and the Defendants' Failure to Pay the Trust Funds to AFC**

26.     Pursuant to the Note, the Defendants, on behalf of BAV, represented to AFC that BAV would hold funds derived from the sale of vehicles purchased by BAV financed by AFC under the Note in trust for the benefit of AFC (the "Trust Funds"), and that BAV would pay the Trust Funds to AFC.

27.     Each time that BAV, through or at the direction of the Defendants, requested that AFC advance it money and/or extend it credit under the Note to finance a vehicle, the Defendants represented to AFC that BAV would pay AFC the Trust Funds derived from the sale of that vehicle.

28.     Based upon those representations, AFC advanced BAV money and/or extended credit to BAV under the Note to finance BAV's vehicle inventory.

29.     Prior to the Petition Date, BAV sold certain vehicles financed by AFC under the Note but did not pay AFC the Trust Funds derived from the sale of those vehicles (the "Secured Vehicles"). A listing of the Secured Vehicles is attached to as **Exhibit 3**.[1]

30.     The Secured Vehicles were inventory of BAV within the meaning of Section 102(a)(48) of Revised Article 9 of the Uniform Commercial Code.

31.     AFC had a security interest in the Secured Vehicles.

32.     AFC's security interest in the Secured Vehicles was first priority.

33.     BAV knew that AFC had a security interest in the Secured Vehicles.

34.     Dacosta knew that AFC had a security interest in the Secured Vehicles.

35.     Antunes knew that AFC had a security interest in the Secured Vehicles.

36.     AFC properly perfected its security interest in the Secured Vehicles.

37.     BAV knew that AFC had a properly perfected security interest in the Secured Vehicles.

38.     Dacosta knew that AFC had a properly perfected security interest in the Secured Vehicles.

---

[1] AFC Stock No. 1156 is listed on Exhibit 3 as a Secured Vehicle. It has been represented to AFC that BAV is still in possession of this vehicle and it therefore has not been sold out of trust, but AFC has not been able to confirm this. To the extent this is accurate, this vehicle may drop off of Exhibit 3. In that case, however, AFC will likely seek relief from stay with respect to this vehicle, in which case it will roll onto Exhibit 4.

39.     Antunes knew that AFC had a properly perfected security interest in the Secured Vehicles.

40.     The Trust Funds were proceeds of the Secured Vehicles.

41.     AFC had a security interest in the Trust Funds.

42.     AFC's security interest in the Trust Funds was first priority.

43.     BAV knew that AFC had a security interest in the Trust Funds.

44.     Dacosta knew that AFC had a security interest in the Trust Funds.

45.     Antunes knew that AFC had a security interest in the Trust Funds.

46.     AFC properly perfected its security interest in the Trust Funds.

47.     BAV knew that AFC had a properly perfected security interest in the Trust Funds.

48.     Dacosta knew that AFC had a properly perfected security interest in the Trust Funds.

49.     Antunes knew that AFC had a properly perfected security interest in the Trust Funds.

50.     Prior to the Petition Date, BAV sold each of the Secured Vehicles and did not pay AFC the Trust Funds derived therefrom.

51.     BAV knew that it was required to pay the Trust Funds to AFC.

52.     Dacosta knew that BAV was required to pay the Trust Funds to AFC.

53.     Antunes knew that BAV was required to pay the Trust Funds to AFC.

54.     BAV knew that it did not have the authority or the consent of AFC to sell, transfer, or otherwise dispose of the Secured Vehicles and not pay AFC the Trust Funds.

55.     Dacosta knew that BAV did not have the authority or the consent of AFC to sell, transfer, or otherwise dispose of the Secured Vehicles and not pay AFC the Trust Funds.

56.    Antunes knew that BAV did not have the authority or the consent of AFC to sell, transfer, or otherwise dispose of the Secured Vehicles and not pay AFC the Trust Funds.

57.    BAV had the ability to pay the Trust Funds to AFC.

58.    BAV intentionally did not pay AFC the Trust Funds despite knowledge that injury to AFC was substantially certain to occur as a result.

59.    Dacosta intentionally did not pay AFC the Trust Funds despite knowledge that injury to AFC was substantially certain to occur as a result.

60.    Antunes intentionally did not pay AFC the Trust Funds despite knowledge that injury to AFC was substantially certain to occur as a result.

61.    BAV knew that injury to AFC was substantially certain to occur as a result of BAV's failure to pay AFC the Trust Funds.

62.    Dacosta knew that injury to AFC was substantially certain to occur as a result of BAV's failure to pay AFC the Trust Funds.

63.    Antunes knew that injury to AFC was substantially certain to occur as a result of BAV's failure to pay AFC the Trust Funds.

64.    By not paying AFC the Trust Funds, BAV knowingly forced AFC to take substantially less than what it was owed.

65.    By not paying AFC the Trust Funds, Dacosta knowingly forced AFC to take substantially less than what it was owed.

66.    By not paying AFC the Trust Funds, Antunes knowingly forced AFC to take substantially less than what it was owed.

67.    Upon information and belief, BAV used the Trust Funds for purposes other than paying AFC, including the payment of BAV's other creditors.

68.     Upon information and belief, the Defendants used the Trust Funds for purposes other than paying AFC, including the payment of their other creditors.

69.     The sale by BAV, through or at the direction of the Defendants, of the Secured Vehicles and the failure to pay AFC the Trust Funds was wrongful.

70.     The sale by BAV, through or at the direction of the Defendants, of the Secured Vehicles and the failure to pay AFC the Trust Funds was done intentionally.

71.     The sale by BAV, through or at the direction of the Defendants, of the Secured Vehicles and the failure to pay AFC the Trust Funds necessarily caused injury to AFC.

72.     The sale by BAV, through or at the direction of the Defendants, of the Secured Vehicles and the failure to pay AFC the Trust Funds was done without just cause or excuse.

73.     For instance, on February 10, 2022, BAV requested, through or at the direction of the Defendants, that AFC make an advance under the Note to finance a 2015 BMW 4 Series, and represented to AFC that BAV would pay the Trust Funds derived from the sale of that vehicle to AFC. Based upon those representations, AFC in fact made an advance to BAV under the Note to finance the 2015 BMW 4 Series, and floored that vehicle as AFC Stock No. 1127. BAV subsequently sold that vehicle and on or about March 22, 2022, BAV received the Trust Funds through funding from Thrift, but never paid those proceeds to AFC. AFC Stock No. 1127 is on the list of Secured Vehicles attached as Exhibit 3.

74.     On February 16, 2022, BAV requested, through or at the direction of the Defendants, that AFC make an advance under the Note to finance a 2012 BMW 5 Series, and represented to AFC that BAV would pay the Trust Funds derived from the sale of that vehicle to AFC. Based upon those representations, AFC in fact made an advance to BAV under the Note to finance the 2012 BMW 5 Series, and floored that vehicle as AFC Stock No. 1129. BAV

subsequently sold that vehicle and on or about September 6, 2022, BAV received the Trust Funds through funding from Thrift, but never paid those proceeds to AFC. AFC Stock No. 1129 is on the list of Secured Vehicles attached as Exhibit 3.

75.     On February 22, 2022, BAV requested, through or at the direction of the Defendants, that AFC make an advance under the Note to finance a 2015 Chevrolet Silverado 2500, and represented to AFC that BAV would pay the Trust Funds derived from the sale of that vehicle to AFC. Based upon those representations, AFC in fact made an advance to BAV under the Note to finance the 2015 Chevrolet Silverado 2500, and floored that vehicle as AFC Stock No. 1131. BAV subsequently sold that vehicle and on or about June 29, 2022, BAV received the Trust Funds through funding from Leaders, but never paid those proceeds to AFC. AFC Stock No. 1131 is on the list of Secured Vehicles attached as Exhibit 3.

76.     On April 4, 2022, BAV requested, through or at the direction of the Defendants, that AFC make an advance under the Note to finance a 2013 Infiniti G37, and represented to AFC that BAV would pay the Trust Funds derived from the sale of that vehicle to AFC. Based upon those representations, AFC in fact made an advance to BAV under the Note to finance the 2013 Infiniti G37, and floored that vehicle as AFC Stock No. 1136. BAV subsequently sold that vehicle and on or about May 16, 2022, BAV received the Trust Funds through funding from Thrift, but never paid those proceeds to AFC. AFC Stock No. 1136 is on the list of Secured Vehicles attached as Exhibit 3.

77.     On April 4, 2022, BAV requested, through or at the direction of the Defendants, that AFC make an advance under the Note to finance a 2016 Nissan Rogue, and represented to AFC that BAV would pay the Trust Funds derived from the sale of that vehicle to AFC. Based upon those representations, AFC in fact made an advance to BAV under the Note to finance the

2016 Nissan Rogue, and floored that vehicle as AFC Stock No. 1137. BAV subsequently sold that vehicle and on or about July 5, 2022, BAV received the Trust Funds through funding from Thrift, but never paid those proceeds to AFC. AFC Stock No. 1137 is on the list of Secured Vehicles attached as Exhibit 3.

78.    On April 19, 2022, BAV requested, through or at the direction of the Defendants, that AFC make an advance under the Note to finance a 2015 Toyota Camry, and represented to AFC that BAV would pay the Trust Funds derived from the sale of that vehicle to AFC. Based upon those representations, AFC in fact made an advance to BAV under the Note to finance the 2015 Toyota Camry, and floored that vehicle as AFC Stock No. 1142. BAV subsequently sold that vehicle and on or about May 31, 2022, BAV received the Trust Funds through funding from Thrift, but never paid those proceeds to AFC. AFC Stock No. 1142 is on the list of Secured Vehicles attached as Exhibit 3.

79.    On June 22, 2022, BAV requested, through or at the direction of the Defendants, that AFC make an advance under the Note to finance a 2015 Porsche Macan, and represented to AFC that BAV would pay the Trust Funds derived from the sale of that vehicle to AFC. Based upon those representations, AFC in fact made an advance to BAV under the Note to finance the 2015 Porsche Macan, and floored that vehicle as AFC Stock No. 1153. BAV subsequently sold that vehicle and on or about June 28, 2022, BAV received the Trust Funds through funding from Leaders, but never paid those proceeds to AFC. AFC Stock No. 1153 is on the list of Secured Vehicles attached as Exhibit 3.

80.    On June 27, 2022, BAV requested, through or at the direction of the Defendants, that AFC make an advance under the Note to finance a 2011 Audi A5, and represented to AFC that BAV would pay the Trust Funds derived from the sale of that vehicle to AFC. Based upon

those representations, AFC in fact made an advance to BAV under the Note to finance the 2011 Audi A5, and floored that vehicle as AFC Stock No. 1154. BAV subsequently sold that vehicle and on or about September 20, 2022, BAV received the Trust Funds through funding from Thrift, but never paid those proceeds to AFC. AFC Stock No. 1154 is on the list of Secured Vehicles attached as Exhibit 3.

81.     On July 25, 2022, BAV requested, through or at the direction of the Defendants, that AFC make an advance under the Note to finance a 2012 Honda Accord, and represented to AFC that BAV would pay the Trust Funds derived from the sale of that vehicle to AFC. Based upon those representations, AFC in fact made an advance to BAV under the Note to finance the 2012 Honda Accord, and floored that vehicle as AFC Stock No. 1161. BAV subsequently sold that vehicle and on or about August 11, 2022, BAV received the Trust Funds through funding from Thrift, but never paid those proceeds to AFC. AFC Stock No. 1161 is on the list of Secured Vehicles attached as Exhibit 3.

82.     On July 27, 2022, BAV requested, through or at the direction of the Defendants, that AFC make an advance under the Note to finance a 2013 Porsche Cayenne, and represented to AFC that BAV would pay the Trust Funds derived from the sale of that vehicle to AFC. Based upon those representations, AFC in fact made an advance to BAV under the Note to finance the 2013 Porsche Cayenne, and floored that vehicle as AFC Stock No. 1162. **BAV subsequently sold that vehicle to Dacosta (who has listed it on his schedules)** and on or about August 19, 2022, BAV received the Trust Funds through funding from Thrift, but never paid those proceeds to AFC. AFC Stock No. 1161 is on the list of Secured Vehicles attached as Exhibit 3.

83.     On August 4, 2022, BAV requested, through or at the direction of the Defendants, that AFC make an advance under the Note to finance a 2008 Porsche Cayenne, and represented

to AFC that BAV would pay the Trust Funds derived from the sale of that vehicle to AFC. Based upon those representations, AFC in fact made an advance to BAV under the Note to finance the 2008 Porsche Cayenne, and floored that vehicle as AFC Stock No. 1163. BAV subsequently sold that vehicle and on or about September 29, 2022, BAV received the Trust Funds through funding from Thrift, but never paid those proceeds to AFC. AFC Stock No. 1163 is on the list of Secured Vehicles attached as Exhibit 3.

84.    On August 17, 2022, BAV requested, through or at the direction of the Defendants, that AFC make an advance under the Note to finance a 2015 Honda Civic, and represented to AFC that BAV would pay the Trust Funds derived from the sale of that vehicle to AFC. Based upon those representations, AFC in fact made an advance to BAV under the Note to finance the 2015 Honda Civic, and floored that vehicle as AFC Stock No. 1166. BAV subsequently sold that vehicle and on or about August 11, 2022, BAV received the Trust Funds through funding from Thrift, but never paid those proceeds to AFC. AFC Stock No. 1166 is on the list of Secured Vehicles attached as Exhibit 3.

85.    On August 18, 2022, BAV requested, through or at the direction of the Defendants, that AFC make an advance under the Note to finance a 2010 Ford Edge, and represented to AFC that BAV would pay the Trust Funds derived from the sale of that vehicle to AFC. Based upon those representations, AFC in fact made an advance to BAV under the Note to finance the 2010 Ford Edge, and floored that vehicle as AFC Stock No. 1170. BAV subsequently sold that vehicle and on or about September 12, 2022, BAV received the Trust Funds through funding from Thrift, but never paid those proceeds to AFC. AFC Stock No. 1170 is on the list of Secured Vehicles attached as Exhibit 3.

86.    On August 16, 2022, BAV requested, through or at the direction of the Defendants, that AFC make an advance under the Note to finance a 2018 BMW X5, and represented to AFC that BAV would pay the Trust Funds derived from the sale of that vehicle to AFC. Based upon those representations, AFC in fact made an advance to BAV under the Note to finance the 2018 BMW X5, and floored that vehicle as AFC Stock No. 1171. BAV subsequently sold that vehicle and on or about August 16, 2022, BAV received the Trust Funds through funding from Thrift, but never paid those proceeds to AFC. AFC Stock No. 1171 is on the list of Secured Vehicles attached as Exhibit 3.

87.    AFC never recovered and was never paid for the Secured Vehicles, and the amount due and owing under the Note from BAV and the Defendants to AFC with respect to those vehicles is $382,968.03.

88.    The debt, including attorneys' fees, costs, and expenses, arising from the willful and malicious injury to the Secured Vehicles, and AFC's interest therein, is a nondischargeable debt of Dacosta's pursuant to 11 U.S.C. § 523(a)(6).

89.    The debt, including attorneys' fees, costs, and expenses, arising from the willful and malicious injury to the Secured Vehicles, and AFC's interest therein, is a nondischargeable debt of Antunes' pursuant to 11 U.S.C. § 523(a)(6).

90.    The debt, including attorneys' fees, costs, and expenses, arising from the willful and malicious injury to the Trust Funds and AFC's interest therein is a nondischargeable debt of Dacosta's pursuant to 11 U.S.C. § 523(a)(6).

91.    The debt, including attorneys' fees, costs, and expenses, arising from the willful and malicious injury to the Trust Funds and AFC's interest therein is a nondischargeable debt of Antunes' pursuant to 11 U.S.C. § 523(a)(6).

WHEREFORE, AFC prays for: (a) a determination that the debt, including attorneys' fees, costs, and expenses, arising from the willful and malicious injury to the Secured Vehicles is a nondischargeable debt of Dacosta's pursuant to 11 U.S.C. § 523(a)(6); (b) a determination that the debt, including attorneys' fees, costs, and expenses, arising from the willful and malicious injury to the Secured Vehicles is a nondischargeable debt of Antunes' pursuant to 11 U.S.C. § 523(a)(6); (c) a determination that the debt, including attorneys' fees, costs, and expenses, arising willful and malicious injury to the Trust Funds and AFC's interest therein is a nondischargeable debt of Dacosta's pursuant to 11 U.S.C. § 523(a)(6); (d) a determination that the debt, including attorneys' fees, costs, and expenses, arising willful and malicious injury to the Trust Funds and AFC's interest therein is a nondischargeable debt of Antunes' pursuant to 11 U.S.C. § 523(a)(6); and (e) all other proper relief.

**COUNT II: Nondischargeability Under 11 U.S.C. § 523(a)(2)(A) as a Result of Property Fraudulently Obtained by the Defendants Related to the Previously Sold Vehicles**

92.     AFC protects itself, in part, by requiring its borrowers to grant AFC first priority security interests in each vehicle financed by AFC, as AFC would not knowingly make unsecured advances to its dealers.

93.     The Note required that BAV grant AFC a first priority security interest in each vehicle financed by AFC.

94.     Each time that BAV, through or at the direction of the Defendants, requested that AFC advance it money and/or extend it credit under the Note to finance the purchase of a vehicle, the Defendants represented to AFC that BAV owned the vehicle free and clear of liens and would grant AFC a first priority security interest in the vehicle.

95.     On or about December 22, 2021, BAV, through or at the direction of the Defendants, requested that AFC make an advance to BAV under the Note to finance the

purchase of a 2020 BMW X4 and represented to AFC that it owned the vehicle free and clear of liens and would grant AFC a first priority security interest in the vehicle. Based on these representations, AFC in fact made an advance to BAV under the Note and financed the purchase of that vehicle as AFC Stock No. 1119. In fact, at the time BAV, through or at the direction of the Defendants, made those representations, the Defendants knew that BAV had already sold AFC Stock No. 1119 and that BAV could not grant AFC a security interest in that vehicle because BAV did not own it.

96.    On or about May 18, 2022, BAV, through or at the direction of the Defendants, requested that AFC make an advance to BAV under the Note to finance the purchase of a 2016 Nissan Rogue and represented to AFC that it owned the vehicle free and clear of liens and would grant AFC a first priority security interest in the vehicle. Based on these representations, AFC in fact made an advance to BAV under the Note and financed the purchase of that vehicle as AFC Stock No. 1145. In fact, at the time BAV, through or at the direction of the Defendants, made those representations, the Defendants knew that BAV had already sold AFC Stock No. 1145 and that BAV could not grant AFC a security interest in that vehicle because BAV did not own it.

97.    On or about July 22, 2022, BAV, through or at the direction of the Defendants, requested that AFC make an advance to BAV under the Note to finance the purchase of a 2007 GMC Yukon and represented to AFC that it owned the vehicle free and clear of liens and would grant AFC a first priority security interest in the vehicle. Based on these representations, AFC in fact made an advance to BAV under the Note and financed the purchase of that vehicle as AFC Stock No. 1160. In fact, at the time BAV, through or at the direction of the Defendants, made those representations, the Defendants knew that BAV had already sold AFC Stock No. 1160 and that BAV could not grant AFC a security interest in that vehicle because BAV did not own it.

98.     AFC Stock Nos. 1119, 1145, and 1160 are referred to collectively herein as the "Previously Sold Vehicles."

99.     BAV obtained money, property, and/or an extension of credit from AFC by false pretenses, false representations, and/or actual fraud through the representations made to AFC by the Defendants related to the Previously Sold Vehicles.

100.    The Defendants knew the representations, statements, and/or omissions of material fact that were made to AFC by them related to the Previously Sold Vehicles were false at the time they were made.

101.    The representations, statements, and/or omissions of material fact that were made to AFC by the Defendants related to the Previously Sold Vehicles were made with the intention and purpose of deceiving AFC.

102.    AFC relied on the representations, statements, and/or omissions of material fact made to AFC by the Defendants related to the Previously Sold Vehicles.

103.    AFC's reliance on the representations, statements, and/or omissions of material fact made to AFC by the Defendants related to the Previously Sold Vehicles was reasonable and justified.

104.    As a proximate result of the representations, statements, and/or omissions of material fact made to AFC by the Defendants related to the Previously Sold Vehicles, AFC has sustained loss and has been damaged.

105.    By making or directing the false representations and statements to AFC related to the Previously Sold Vehicles, the Defendants induced AFC to forbear from exercising its rights under the Note.

106.    AFC would not have sustained the damages that it did but for the representations, statements, and/or omissions of material fact made to AFC by the Defendants related to the Previously Sold Vehicles.

107.    As a result of the misrepresentations made to AFC by the Defendants related to the Previously Sold Vehicles, AFC was unable to determine that BAV did not own the Previously Sold Vehicles and could not grant AFC security interests in those vehicles, and that any advances made by AFC under the Note with respect to the Previously Sold Vehicles would be unsecured.

108.    Had AFC known that the Defendants were misrepresenting the true status of the Previously Sold Vehicles and that AFC would not receive a first priority security interest in those vehicles, AFC would have exercised its rights under the Note by declaring a default and refusing to make any further advances to BAV under the Note.

109.    As a result of the representations, statements, and/or omissions of material fact made to AFC by the Defendants related to the Previously Sold Vehicles, however, AFC did not exercise its rights under the Note and continued to make advances to BAV under the Note.

110.    After the Defendants first misrepresented the status of AFC Stock No. 1119, one of the Previously Sold Vehicles, on December 22, 2021, AFC made further advances to BAV at the request of the Defendants to finance at least 40 vehicles, including AFC Stock Nos. 1120, 1121, 1123, 1124, 1127, 1129, 1131, 1136, 1137, 1140, 1141, 1142, 1144, 1145, 1146, 1147, 1150, 1151, 1152, 1153, 1154, 1155, 1156, 1157, 1158, 1159, 1161, 1162, 1163, 1164, 1165, 1166, 1169, 1170, 1171, 1172, 1173, 1174, 1175, and 1176 (collectively, the "Subsequently Floored Vehicles").

111.    After AFC discovered the ongoing fraud perpetrated on it by BAV and the Defendants, AFC immediately exercised its rights under the Note and repossessed its remaining collateral.

112.    By that time, BAV had already sold the Secured Vehicles out of trust and never paid AFC the Trust Funds from the sale of those vehicles.

113.    AFC did recover a number of vehicles that it had financed under the Note and has recently been granted Bankruptcy Court authority to dispose of those vehicles in a commercially reasonable manner (the "Repossessed Vehicles"), but AFC has suffered and will suffer a loss on those vehicles. A listing of the Repossessed Vehicles is attached to as **Exhibit 4**.

114.    The total loss AFC has suffered on the Subsequent Advance Vehicles (which includes all of the Secured Vehicles and all of the Repossessed Vehicles) is $457,671.85.

115.    The debt, including attorneys' fees, costs, and expenses, arising from the money, property, and/or extension of credit BAV and the Defendants obtained from AFC by false pretenses, false representations, and/or actual fraud related to the Previously Sold Vehicles and the Subsequent Advance Vehicles is a nondischargeable debt of Dacosta's pursuant to 11 U.S.C. § 523(a)(2)(A).

116.    The debt, including attorneys' fees, costs, and expenses, arising from the money, property, and/or extension of credit BAV and the Defendants obtained from AFC by false pretenses, false representations, and/or actual fraud related to the Previously Sold Vehicles and the Subsequent Advance Vehicles is a nondischargeable debt of Antunes' pursuant to 11 U.S.C. § 523(a)(2)(A).

WHEREFORE, AFC prays for: (a) a determination that the debt, including attorneys' fees, costs, and expenses, arising from the money, property, and/or extensions of credit BAV

obtained from AFC by false pretenses, false representations, and/or actual fraud related to the Previously Sold Vehicles is a nondischargeable debt of Dacosta's pursuant to 11 U.S.C. § 523(a)(2)(A); (b) a determination that the debt, including attorneys' fees, costs, and expenses, arising from the money, property, and/or extensions of credit BAV obtained from AFC by false pretenses, false representations, and/or actual fraud related to the Previously Sold Vehicles is a nondischargeable debt of Antunes' pursuant to 11 U.S.C. § 523(a)(2)(A); (c) a determination that the debt, including attorneys' fees, costs, and expenses, arising from the money, property, and/or extensions of credit BAV obtained from AFC by false pretenses, false representations, and/or actual fraud related to the Subsequent Advance Vehicles is a nondischargeable debt of Dacosta's pursuant to 11 U.S.C. § 523(a)(2)(A); (d) a determination that the debt, including attorneys' fees, costs, and expenses, arising from the money, property, and/or extensions of credit BAV obtained from AFC by false pretenses, false representations, and/or actual fraud related to the Subsequent Advance Vehicles is a nondischargeable debt of Antunes' pursuant to 11 U.S.C. § 523(a)(2)(A); and (e) all other proper relief.

### COUNT III: Nondischargeability Under 11 U.S.C. § 523(a)(2)(A) as a Result of Property Fraudulently Obtained by the Defendants Related to the Lot Audit Fraud Vehicles

117.    AFC periodically conducts lots audits of its borrowers. One purpose of lot audits is to confirm that vehicles purchased by a borrower and financed by AFC and for which AFC has not yet been paid in full are unsold and constitute inventory of the borrower upon which AFC has properly perfected security interests.

118.    If auditors are unable to verify the existence and condition of vehicles during lot audits, AFC may determine that a borrower is in default under its loan documents. In the event of default, AFC may exercise its legal rights including repossessing its collateral and/or refusing to make further advances to a borrower under its loan documents with AFC.

119.     On or about July 20, 2022, AFC, by or through its agent, conducted an audit of the lot of BAV (the "Lot Audit").

120.     During the Lot Audit, AFC was unable to verify the status of AFC Stock No. 1136, a 2013 Infiniti G37 floored by AFC on April 4, 2022, as it was not on BAV's lot. At that time, Dacosta, with the knowledge of Antunes, represented to AFC that the vehicle was not on BAV's lot because it had been sold that day and that funding was pending. In fact, at the time Dacosta made those representations to AFC, he and Antunes knew that AFC Stock No. 1136 had already been sold by BAV on or about May 16, 2022, and no longer constituted inventory of BAV, and that BAV had already received the Trust Funds from the sale of that vehicle and had failed and refused to pay the proceeds to AFC. AFC Stock No. 1136 is on the list of Secured Vehicles attached as Exhibit 3.

121.     During the Lot Audit, AFC was unable to verify the status of AFC Stock No. 1137, a 2016 Nissan Rogue floored by AFC on April 4, 2022, as it was not on BAV's lot. At that time, Dacosta, with the knowledge of Antunes, represented to AFC that the vehicle was not on BAV's lot because it was on a test drive and Dacosta provided AFC with a copy of a driver's license of the person allegedly test driving the vehicle. In fact, at the time Dacosta made those representations to AFC, he and Antunes knew that AFC Stock No. 1137 had already been sold by BAV on or about July 5, 2022, and no longer constituted inventory of BAV, and that BAV had already received the Trust Funds from the sale of that vehicle and had failed and refused to pay the proceeds to AFC. AFC Stock No. 1137 is on the list of Secured Vehicles attached as Exhibit 3.

122.     During the Lot Audit, AFC was unable to verify the status of AFC Stock No. 1145, a 2016 Nissan Rogue floored by AFC on April 4, 2022, as it was not on BAV's lot. At that

time, Dacosta, with the knowledge of Antunes, represented to AFC that the vehicle was not on

BAV's lot because it was located at his residence, and he later provided a photo of the vehicle

allegedly proving its location. In fact, at the time Dacosta made those representations to AFC, he

and Antunes knew that AFC Stock No. 1145 had already been sold by BAV on or about August

16, 2022, and no longer constituted inventory of BAV, and that BAV had already received the

Trust Funds from the sale of that vehicle and had failed and refused to pay the proceeds to AFC.

AFC Stock No. 1145 is on the list of Secured Vehicles attached as Exhibit 3.

123.    AFC Stock Nos. 1136, 1137, and 1145 are referred to collectively herein as the

"Lot Audit Fraud Vehicles."

124.    BAV had already received the Trust Funds from the sale of each of the Lot Audit

Fraud Vehicles at the time of the Lot Audit but had not paid them to AFC and did not pay them

to AFC.

125.    BAV obtained money, property, and/or an extension of credit from AFC by false

pretenses, false representations, and/or actual fraud through the representations made to AFC by

Dacosta with the knowledge of Antunes with respect to the Lot Audit Fraud Vehicles.

126.    The Defendants knew the representations, statements, and/or omissions of

material fact that were made to AFC by Dacosta with the knowledge of Antunes with respect to

the Lot Audit Fraud Vehicles were false at the time they were made.

127.    The representations, statements, and/or omissions of material fact that were made

to AFC by Dacosta with the knowledge of Antunes with respect to the Lot Audit Fraud Vehicles

were made with the intention and purpose of deceiving AFC.

128.    AFC relied on the representations, statements, and/or omissions of material fact made to AFC by Dacosta with the knowledge of Antunes with respect to the Lot Audit Fraud Vehicles.

129.    AFC's reliance on the representations, statements, and/or omissions of material fact made to AFC by Dacosta with the knowledge of Antunes with respect to the Lot Audit Fraud Vehicles was reasonable and justified.

130.    As a proximate result of the representations, statements, and/or omissions of material fact made to AFC by Dacosta with the knowledge of Antunes with respect to the Lot Audit Fraud Vehicles, AFC has sustained loss and has been damaged.

131.    By making the false representations and statements to AFC with respect to the Lot Audit Fraud Vehicles, Dacosta, with the knowledge of Antunes, induced AFC to forbear from exercising its rights under the Note.

132.    By making the false representations and statements to AFC with respect to the Lot Audit Fraud Vehicles, Dacosta, with the knowledge of Antunes, induced AFC to forbear from exercising its rights under the Note.

133.    AFC would not have sustained the damages that it did but for the representations, statements, and/or omissions of material fact made to AFC by Dacosta with the knowledge of Antunes with respect to the Lot Audit Fraud Vehicles.

134.    As a result of the misrepresentations made to AFC by Dacosta with the knowledge of Antunes with respect to the Lot Audit Fraud Vehicles, AFC was unable to determine that BAV had sold vehicles out of trust and that AFC had lost its security interest in the Lot Audit Fraud Vehicles.

135.    As a result of the misrepresentations made to AFC by Dacosta with the knowledge of Antunes with respect to the Lot Audit Fraud Vehicles, AFC was unable to determine that BAV was in default under the Note.

136.    Had AFC known the true status of the Lot Audit Fraud Vehicles that were misrepresented at the Lot Audit by Dacosta with the knowledge of Antunes and the fact that they were no longer collateral securing AFC's loan to BAV, AFC would have exercised its rights under the Note in an effort to mitigate its damages by, among other things, refusing to make any further advances to BAV under the Note.

137.    As a result of the representations, statements, and/or omissions of material fact made to AFC by Dacosta with the knowledge of Antunes with respect to the Lot Audit Fraud Vehicles, however, AFC did not exercise its rights under the Note and continued to make advances to BAV under the Note at the request of the Defendants after the Lot Audit.

138.    After the Lot Audit, AFC made further advances to BAV under the Note at the request of the Defendants to finance AFC Stock Nos. 1157, 1158, 1159, 1161, 1162, 1163, 1164, 1165, 1166, 1169, 1170, 1171, 1172, 1173, 1174, 1175, and 1176 (collectively, the "Subsequently Floored Vehicles").

139.    After AFC discovered the true status of the Lot Audit Fraud Vehicles that were misrepresented during the Lot Audit and that BAV was in default under the Note, AFC immediately exercised its rights under the Note and repossessed its remaining collateral that it had financed after the Lot Audit.

140.    By that time, BAV had already sold a number of the Subsequently Floored Vehicles out of trust and never paid AFC the Trust Funds from the sale of those vehicles.

141.    AFC did recover some of the Subsequently Floored Vehicles (specifically, AFC Stock Nos. 1158, 1159, 1165, 1172, and 1175) and has recently been granted Bankruptcy Court authority to dispose of those vehicles in a commercially reasonable manner, but AFC has suffered and will suffer a loss on those vehicles.

142.    The total loss AFC has suffered on the Subsequently Floored Vehicles is $196,722.88.

143.    The debt, including attorneys' fees, costs, and expenses, arising from the money, property, and/or extension of credit BAV and the Defendants obtained from AFC by false pretenses, false representations, and/or actual fraud related to the Lot Audit Fraud Vehicles and the Subsequently Floored Vehicles is a nondischargeable debt of Dacosta's pursuant to 11 U.S.C. § 523(a)(2)(A).

144.    The debt, including attorneys' fees, costs, and expenses, arising from the money, property, and/or extension of credit BAV and the Defendants obtained from AFC by false pretenses, false representations, and/or actual fraud related to the Lot Audit Fraud Vehicles and the Subsequently Floored Vehicles is a nondischargeable debt of Antunes' pursuant to 11 U.S.C. § 523(a)(2)(A).

WHEREFORE, AFC prays for: (a) a determination that the debt, including attorneys' fees, costs, and expenses, arising from the money, property, and/or extensions of credit BAV obtained from AFC by false pretenses, false representations, and/or actual fraud related to the Lot Audit Fraud Vehicles is a nondischargeable debt of Dacosta's pursuant to 11 U.S.C. § 523(a)(2)(A); (b) a determination that the debt, including attorneys' fees, costs, and expenses, arising from the money, property, and/or extensions of credit BAV obtained from AFC by false pretenses, false representations, and/or actual fraud related to the Lot Audit Fraud Vehicles is a

nondischargeable debt of Antunes' pursuant to 11 U.S.C. § 523(a)(2)(A); (c) a determination that the debt, including attorneys' fees, costs, and expenses, arising from the money, property, and/or extensions of credit BAV obtained from AFC by false pretenses, false representations, and/or actual fraud related to the Subsequently Floored Vehicles is a nondischargeable debt of Dacosta's pursuant to 11 U.S.C. § 523(a)(2)(A); (d) a determination that the debt, including attorneys' fees, costs, and expenses, arising from the money, property, and/or extensions of credit BAV obtained from AFC by false pretenses, false representations, and/or actual fraud related to the Subsequently Floored Vehicles is a nondischargeable debt of Antunes' pursuant to 11 U.S.C. § 523(a)(2)(A); and (e) all other proper relief.

### COUNT IV: Nondischargeability Under 11 U.S.C. § 523(a)(4) as a Result of Antunes' Defalcation of the Trust Funds

145.    By executing the Note, AFC and BAV intended to create an express or technical trust with respect to the Trust Funds.

146.    Pursuant to the Note, BAV and Antunes were trustees and AFC was the beneficiary with respect to the Trust Funds.

147.    BAV expressly agreed that it would hold the Trust Funds in trust for the benefit of AFC.

148.    Antunes expressly agreed that BAV would hold the Trust Funds in trust for the benefit of AFC.

149.    BAV was clearly put on notice that it was undertaking the special responsibilities of a trustee with respect to the Trust Funds.

150.    Antunes was clearly put on notice that she was undertaking the special responsibilities of a trustee with respect to the Trust Funds.

151.    There was a fiduciary relationship between BAV and AFC with respect to the Trust Funds.

152.    There was a fiduciary relationship between Antunes and AFC with respect to the Trust Funds.

153.    BAV did not have unrestricted use of the Trust Funds.

154.    BAV knew that it did not have unrestricted use of the Trust Funds.

155.    Antunes did not have unrestricted use of the Trust Funds.

156.    Antunes knew that he did not have unrestricted use of the Trust Funds.

157.    BAV was not entitled to treat the Trust Funds as its own.

158.    BAV knew that it was not entitled to treat the Trust Funds as its own.

159.    Antunes was not entitled to treat the Trust Funds as her own.

160.    Antunes knew that he was not entitled to treat the Trust Funds as her own.

161.    While acting in a fiduciary capacity, BAV failed to properly account for the Trust Funds.

162.    BAV's failure to properly account for the Trust Funds was improper.

163.    BAV's failure to properly account for the Trust Funds was intentional.

164.    While acting in a fiduciary capacity, Antunes failed to properly account for the Trust Funds.

165.    Antunes' failure to properly account for the Trust Funds was improper.

166.    Antunes' failure to properly account for the Trust Funds was intentional.

167.    The value of the Trust Funds is $382,968.03.

168.    The debt, including attorneys' fees, costs, and expenses, arising from the failure to pay the Trust Funds to AFC is a result of defalcation while acting in a fiduciary capacity, and is a nondischargeable debt of Antunes' pursuant to 11 U.S.C. § 523(a)(4).

WHEREFORE, AFC prays for: (a) a determination that the debt, including attorneys' fees, costs, and expenses, arising from the failure to pay the Trust Funds to AFC is a nondischargeable debt of Antunes' pursuant to 11 U.S.C. § 523(a)(4) as a result of defalcation; and (b) all other proper relief.

### COUNT V: Nondischargeability Under 11 U.S.C. § 523(a)(4) as a Result of Antunes' Embezzlement of the Trust Funds

169.    AFC was the beneficial owner of the Trust Funds.

170.    AFC permitted BAV to retain the Trust Funds pursuant to the terms of the Note.

171.    BAV did not have unrestricted use of the Trust Funds.

172.    BAV was not entitled to treat the Trust Funds as its own.

173.    Antunes did not have unrestricted use of the Trust Funds.

174.    Antunes was not entitled to treat the Trust Funds as his own.

175.    BAV knew that it was required to pay the Trust Funds to AFC.

176.    Antunes knew that BAV was required to pay the Trust Funds to AFC.

177.    While acting in a fiduciary capacity, BAV misappropriated the Trust Funds.

178.    While acting in a fiduciary capacity, Antunes misappropriated the Trust Funds.

179.    Upon information and belief, BAV appropriated the Trust Funds for its own use or benefit.

180.    Upon information and belief, Antunes appropriated the Trust Funds for her own use or benefit.

181.    Upon information and belief, BAV appropriated the Trust Funds with fraudulent intent.

182.    Upon information and belief, Antunes appropriated the Trust Funds with fraudulent intent.

183.    Upon information and belief, BAV converted the Trust Funds.

184.    Upon information and belief, Antunes converted the Trust Funds.

185.    The value of the Trust Funds is $382,968.03.

186.    The debt, including attorneys' fees, costs, and expenses, arising from the failure to pay the Trust Funds to AFC is a result of embezzlement, and is a nondischargeable debt of Antunes' pursuant to 11 U.S.C. § 523(a)(4)

WHEREFORE, AFC prays for: (a) a determination that the debt, including attorneys' fees, costs, and expenses, arising from the failure to pay the Trust Funds to AFC is a nondischargeable debt of Antunes' pursuant to 11 U.S.C. § 523(a)(4) as a result of embezzlement; and (b) all other proper relief.

Dated:  January 12, 2019                    _/s/ Donna L. Thompson, Esq._____
                                            DONNA L. THOMPSON
                                            Attorney for Plaintiff
                                            *PHYSICAL ADDRESS:*
                                            1442 Lakewood Road
                                            Manasquan, NJ  08736
                                            *SEND ALL MAIL:*
                                            PO Box 679
                                            Allenwood, NJ  08724
                                            732-292-3000 Phone
                                            732-292-3004 Fax
                                            Donna.thompson@dlthompsonlaw.com