| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>**DUANE MORRIS LLP**<br>Drew S. McGehrin (DSMcGehrin@duanemorris.com)<br>30 S. 17th Street<br>Philadelphia, PA 19103<br>215.979.1000 (Telephone)<br>215.979.1020 (Facsimile)<br><br>*Attorneys for Vero Finance Technologies, Inc.* | Chapter 11 |
| In re:<br><br>Alexandre J. Dacosta,<br>Vivianne C. Antunes,<br><br>               Debtors. | Subchapter V<br><br>Case No. 22-18303 (JKS)<br><br>Honorable John K. Sherwood |
| Vero Finance Technologies, Inc. d/b/a Lever Auto,<br><br>               Plaintiff,<br><br>               v.<br><br>Alexandre J. Dacosta,<br>Vivianne C. Antunes,<br><br>               Defendants/Debtors. | Adv. Pro. No. _____ |

**COMPLAINT TO DETERMINE
DISCHARGEABILITY OF DEBT PURSUANT TO
11 U.S.C. § 523 (a)(2)(A), § 523(a)(4), AND § 523(a)(6)**

Plaintiff, Vero Finance Technologies, Inc. d/b/a Lever Auto ("Lever"), by and through its undersigned attorneys Duane Morris LLP, files this complaint (the "Complaint") pursuant to 11 U.S.C. § 523(a)(2)(A), § 523(a)(4), and § 523(a)(6), and Rule 7001 of the Federal Rules of Bankruptcy Procedure. In support of this Complaint, Lever respectfully states as follows:

## THE PARTIES

1. Lever is a Delaware C corporation, with principal place of business at 287 Park Avenue South, Suite 700, New York, NY 10010.

2. Upon information and belief, Alexandre J. Dacosta ("Dacosta") is a resident of New Jersey with an address of 78-80 Columbia Ave, Kearny, NJ 07032.

3. Upon information and belief, Vivianne C. Antunes ("Antunes," and together with Dacosta, the "Debtors"), is a resident of New Jersey with an address of 131 Union St, 1st Floor, Newark, NJ 07105.

4. Upon information and belief, the Debtors are principals of BAV Auto LLC d/b/a Costas Auto Gallery ("Costas Auto") and guarantors of financial accommodations extended by Lever to Costas Auto.

5. On or about October 19, 2022, the Debtors filed a joint petition for relief under chapter 13 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of New Jersey (the "Court"), commencing the instant proceedings (the "Bankruptcy Case").

6. On December 20, 2022, the Court entered an Order [Docket No. 40] converting the Bankruptcy Case to a proceeding under subchapter V of chapter 11 of the Bankruptcy Code.

7. The deadline to file complaints to determine the dischargeability of debts in the Debtors Bankruptcy Case is January 17, 2023, which date has not yet passed.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 157 and § 1334.

9. Venue of this proceeding is proper in this district pursuant to 28 U.S.C. § 1409.

10. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2). Lever consents to entry of final judgments and orders entered in this adversary proceeding.

## STATEMENT OF FACTS

A. **The Floorplan Agreement.**

11. On April 19, 2022, Lever and Costas Auto entered into a certain Floorplan Credit and Security Agreement (the "Floorplan Agreement"), through which Lever extended floorplan financing to Costas Auto for the purchase of new and used motor vehicles ("Advances") (together with other credit extended, the "Obligations"). A true and correct copy of the Floorplan Agreement is attached hereto as **Exhibit A** and incorporated herein by reference.

12. As security for the Obligations, Costas Auto granted Lever a security interest in, a lien on, and pledge and assignment of substantially all of Costas Auto's assets, including the proceeds thereof, and granted Lever a first priority security interest in all of floored vehicles and the proceeds thereof. *See* Exhibit A, §§ 2.1-2.4.

13. On July 22, 2022, Lever perfected its security interest in the Collateral and all assets of the Defendants by filing a UCC Financing Statement with the State of New Jersey. Attached hereto as **Exhibit B** is a true and correct copy of the UCC Financing Statement.

14. With respect to floored vehicles, Lever holds physical titles to such vehicles. Whenever a floored vehicle is sold, Costas Auto must immediately repay the balance of any Advances owed on account of that vehicle and, upon receipt of such payment, Lever releases that title for Costas Auto to provide to the purchaser.

B. **Debtors Guarantee Full Payment of Costa Auto's Obligations.**

15. In connection with the execution of the Floorplan Agreement, on April 19, 2022, the Debtors executed a Guaranty. A true and correct copy of the Guaranty is attached hereto as **Exhibit C** and incorporated herein by reference.

16. Debtors, as Guarantors, "absolutely and unconditionally guarantee[d] the full and punctual payment to [Lever] of all sums that may be presently due and owing and of all sums that may become due and owing to [Lever] from [Costas Auto], including all principal, interest, fees, charges and attorneys' fees . . . together with all costs and expenses incurred by you including attorneys' fees seeking to enforce the Obligations." *Id*. at p. 1.

17. Debtors further agreed their liability is "direct and unconditional and due immediately upon default of [Costas Auto] without demand or notice and without requiring [Lever] first to resort to any other right, remedy or security," and that if Costas Auto "become insolvent" or if a "petition in bankruptcy" shall be filed by Costas Auto "any and all obligations of Guarantor shall be immediately due and payable without notice." *Id*. at p. 1, (2), (5).

18. The Guaranty is "a continuing guaranty and shall remain in full force and effect until all Obligations are unconditionally paid in full and [Costas Auto] and [Lever] have terminated all agreements between you," and the "the liability of Guarantor is unlimited . . ." *Id*. at p. 1, (4).

**C.    The Debtors' Obligations To Lever Arose as a Result of the Fraud, Defalcation, False Representation, False Pretense and Willful Injury.**

19. As set forth herein, Costas Auto, through or at the direction of the Debtors, obtained money, property, and/or an extension of credit from Lever by false pretenses, false representations, and/or actual fraud.

20. Lever accordingly suffered damages as a result of the foregoing and as a result of the Debtors' willful violations of, and misrepresentations made in connection with, the Floorplan Agreement.

### i. Double Flooring of Vehicles

21. One manner in which a car dealership and its principals can defraud its lenders is "double flooring" financed vehicles. This occurs when a dealership obtains financing from two or more floorplan lenders secured by the same floored vehicle without the knowledge or consent of such lenders.

22. Here, Costas Auto and the Debtors double-floored at least two vehicles subject to Lever's security interest, as confirmed in certain pleadings filed in the Costas Auto Bankruptcy Proceedings (as defined herein) by a separate floorplan lender.

23. Automotive Finance Corporation ("AFC"), filed a motion [Docket No. 23 in the Costas Bankruptcy Proceedings] (the "AFC Motion") seeking relief to sell vehicles it repossessed. As set forth in the AFC Motion, Costas Auto allegedly sold 28 vehicles which AFC held a first priority lien prior to the commencement of the Costas Bankruptcy Proceedings out of trust.

24. The AFC Motion includes an inventory listing of the vehicles that AFC holds an interest in which were sold out of trust. Two of the vehicles on AFC's inventory list included in the AFC Motion also appear on the Lever Inventory List[1]: (i) 2003 PORSCHE 911 – gray, VIN No. WP0CA29963S65071, and (ii) 2016 PORSCHE Macan - Gray, VIN No. WP1AB2A54GLB49913.

---

[1] Attached hereto as **Exhibit D** is a copy of the inventory of floored vehicles (the "Lever Inventory List")

5

25. This overlap evidences clear double-flooring of these two vehicles: the Debtors and Costas Auto financed certain vehicles with AFC and granted AFC a security interest in the same. The Debtors and Costas Auto then presented those same encumbered vehicles to Lever as clear of all liens and interests for purposes of obtaining and securing additional financing from Lever. Indeed, pursuant to the Floorplan Agreement, a condition precedent to any financing was the provision and maintenance of a first priority security interest in such vehicles in favor of Lever. *See* Exhibit A, § 2.4.

26. The double-flooring of these vehicles and material misrepresentations associated with the same evidence the Debtors' fraud on Lever.

   **ii.    Sales Out Of Trust**

27. An additional way through which a car dealership and its principals can defraud its lenders is selling floored vehicles "out of trust" or "SOT." This occurs when a dealership sells a floored vehicle to a buyer, fails to repay the floorplan lender with the proceeds of the sale, and obtains a duplicate title from the department of motor vehicles for the buyer.

28. On August 23, 2022, during an onsite audit of Costas Auto, Lever discovered that one of its floored vehicles was not on the dealership's lot in violation of the Floorplan Agreement, which requires all floored vehicles to be kept on the dealership lot.

29. After a discussion with Dacosta, Lever learned that this vehicle was improperly sold out of trust. Costas Auto repaid Lever for the SOT vehicle.

30. During a later visit on September 27, 2022, Lever observed only two of the twelve floored vehicles. Based on discussions with Costas Auto and Dacosta, Lever learned that (i) four additional floored vehicles were SOT, and (ii) six others were improperly located at secondary lots or body shops.

31. The four SOT vehicles include a 2016 Dodge Durango, 2004 Porsche 911, a 2016 Porsche Macan, and a 2018 Mercedes GLE. The total amount due and owing on these vehicles is at least $117,586.02.

32. On September 27, 2022, Dacosta personally promised Lever that he would pay $60,000 to Lever on September 30, 2022 for two of the four SOT vehicles. Dacosta did not make the payment.

33. The Debtors' actions in selling the floored vehicles out of trust and moving other vehicles without Lever's consent constitute a fraud on Lever. The actions also constitute Events of Default under the Floorplan Agreement between Costas Auto and Lever.

34. As a result, on October 6, 2022, Lever sent a written Demand for Payment seeking full payment of all outstanding Obligations in the amount of **$237,336.23** based upon their obligations under the Guaranty.

35. Thereafter, on October 6, 2022 Lever attempted to take possession of the remainder Lever's floored vehicles, but learned that Costas Auto filed for relief under chapter 11 of the Bankruptcy Code with this Court, which case is currently pending at case number 22-17933-JKS (the "<u>Costas Bankruptcy Proceedings</u>"). As a result, Lever could not take possession of its floored vehicles.

36. The sales out of trust were confirmed by Costas Auto itself in its schedules and statements filed with the Court in the Costas Bankruptcy Proceedings. On its Official Form 207, Costas Auto states that the "Debtor is reviewing its records to determine all vehicles sold out of trust which affect its Floorplan Lenders. Additional information on all vehicles sold out of trust shall be provided and this shall be updated accordingly." *See* Docket No. 15 in Case No. 22-17933-JKS at p. 3.

### iii. The Debtors Misrepresented the Extent of the Inventory Available as Collateral to Secure Financing.

37. The Debtors further intentionally misled Lever (and, presumably, other floorplan lenders) by presenting vehicles as being part of Costas Auto's inventory available for use as collateral when those vehicles are instead allegedly personally owned by one or both of the Debtors.

38. For example, in the Debtors' *Small Business Debtors' Joint Plan Of Reorganization* [Docket No. 53] (the "Plan"), the Debtors represent that a 2008 Lamborghini Gallardo Coupe is an asset owned by Alexandre Dacosta and Vivian Antunes available to satisfy the claims of their creditors. *See* Plan at § 1.5. However, upon information and belief, this same vehicle is advertised as being inventory owned by Costas Auto, available for sale, on Costas Auto's website. A screenshot showing this offer is attached hereto as **Exhibit E**.

39. While this particular vehicle appears to be subject to a priority security interest of another floorplan lender, this presentation nevertheless is further evidence of the Debtors' intent to misrepresent the extent of available inventory available to secure financing Lever and other floorplan lenders have extended or may extend.

### iv. The Debtors' Fraud, Defalcation, False Representation, False Pretense and Willful Injury Also Occurred at the Inception of the Lending Relationship.

40. All of the foregoing evidence the fraud propagated by the Debtors and Costas Auto. After investigation, Lever has concluded that their actions of fraud and commission of willful injuries occurred at the outset of the lending relationship.

41. The Debtors made representations about Costas Auto's financial conditions that were not true and they knew them to be not true. For example, prior to executing the Floorplan Agreement, Lever had concerns about Costas Auto's financial condition because, among other

things, Costas Auto had received a Merchant Cash Advance. An MCA provides alternative financing to a traditional small-business loan and is best for small businesses that need capital immediately to cover cash-flow shortages or short-term expenses.

42. The Debtors assured Lever that despite receiving an MCA, Costas Auto's financial issues were resolved and that the MCA was in the process of being paid off. Defendants stated that the MCA was used by the dealership as a short term financing solution for certain vehicles but that the MCA was not meant to address cash flow issues.

43. However, those representations were false. Lever has since learned that the MCA has not been paid off, but has been extended or increased. Further, Dacosta informed Lever that Costas Auto obtained the MCA to pay off another lender to which the dealership was out of trust approximately $450,000.00.

44. The Debtors made these false representations about Costas Auto's financial condition knowing they were false to induce Lever into entering in a financing arrangement with Costas Auto. Lever relied on these representations to its detriment when it decided to enter the financing arrangement, execute the Floorplan Agreement and continue the relationship.

45. The Debtors' false representations about Costas Auto's financial condition violated the Floorplan Agreement. The Floorplan Agreement required all financial and other information provided to Lever to be "accurate, not misleading, and does not fail to disclose all material facts appropriate for Lender to know Dealer's financial position, business performance, and prospects." Exh. A at § 3.9.

46. Therefore, Costas Auto, through or at the direction of the Debtors, obtained money, property, and/or an extension of credit from Lever by false pretenses, false representations, and/or actual fraud.

**D.     The Prepetition Lawsuit and the Bankruptcy**

47.     As a result of the foregoing, prior to the Petition Date, on or about October 14, 2022, Lever filed a Verified Complaint against the Debtors, *Vero Finance Technologies, Inc. d/b/a Lever Auto v. Alexandre J. Dacosta and Vivianne C. Antunes* New Jersey Superior Court for Hudson County, Chancery Division, Docket No.: C-000113-22 (the "Prepetition Lawsuit"), seeking a writ of attachment on all of the Debtors' assets, an injunction barring the Debtors from transferring or otherwise disposing of those assets, as well as damages resulting from the Debtors' unjust enrichment, fraud, and breach of contract based upon the above-described actions.

48.     As a result of the Debtors' Bankruptcy Case, the Prepetition Lawsuit has been stayed prior to Lever obtaining any judgment against the Debtors.

49.     In the Bankruptcy Case, Lever filed a proof of claim, designated as claim number 13, in the aggregate amount of $274,844.15 on account of the Debtors' outstanding obligations owed under the Guaranty.

## CAUSES OF ACTION

### COUNT I
### 11 U.S.C. § 523 (a)(2)(A)

50.     Lever repeats and realleges every allegation set forth in paragraphs 1 through 49 of this Complaint.

51.     Section 523(a)(2)(A) of the Bankruptcy Code provides, in pertinent part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1238(b) of this title does not discharge an individual debtor from any debt—
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> >
> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . [.]

52. Prior to the execution of the Floorplan Agreement and thereafter, the Debtors made material misrepresentations to Lever as described above (the "Material Misrepresentations").

53. At the time the Debtors made the Material Misrepresentations, the Debtors had knowledge of their falsity or reckless disregard or gross recklessness as to their truth.

54. The Debtors made the Material Misrepresentations to Lever with the intent to deceive Lever.

55. The Debtors made the Material Misrepresentations to Lever to induce Lever to extend and continue the credit facilities under the Floorplan Agreement.

56. Lever reasonably relied on the Debtors' Material Misrepresentations when it committed to make, fund, and continue the credit facilities under the Floorplan Agreement.

57. Lever reasonably believed the Debtors' representations to be true, was deceived thereby, and acted in reasonable reliance upon these Material Misrepresentations.

58. Lever suffered losses as the proximate result of the Debtors making the Material Misrepresentations.

59. Accordingly, under 11 U.S.C. § 523(a)(2)(A), the debt, including attorneys' fees, costs, and expenses, from the money, property, and/or extension of credit the Debtors, in their respective individual capacities and on behalf of Costa Auto, obtained from Lever by false pretenses, false representations, and/or actual fraud is a nondischargeable debt of the Debtors pursuant to 11 U.S.C. § 523(a)(2)(A).

### COUNT II
### 11 U.S.C. § 523(a)(4)

60. Lever repeats and realleges every allegation set forth in paragraphs 1 through 59 of this Complaint.

61. Section 523(a)(4) of the Bankruptcy Code provides, in pertinent part:

>
> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1238(b) of this title does not discharge an individual debtor from any debt—
>
> > (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]

62. At the time the Debtors made the Material Misrepresentations, the Debtors were acting in a fiduciary capacity with respect to Costas Auto.

63. The Debtor made the Material Misrepresentations to Lever with the intent to deceive Lever.

64. The Debtors made the Material Misrepresentations to Lever to induce Lever to extend and continue the credit facilities under the Floorplan Agreement.

65. Lever reasonably relied on the Debtors' Material Misrepresentations when it committed to make, fund, and continue the credit facilities under the Floorplan Agreement.

66. Lever reasonably believed the Debtors' representations to be true, was deceived thereby, and acted in reasonable reliance upon these Material Misrepresentations.

67. Lever suffered losses as the proximate result of the Debtors making the Material Misrepresentations.

68. The debt, including attorneys' fees, costs, and expenses, from the Debtors' fraud or defalcation, committed in their respective individual capacities and on behalf of the Costas Auto, while acting in a fiduciary capacity is a nondischargeable debt of the Debtor pursuant to 11 U.S.C. § 523(a)(4).

## COUNT III
## 11 U.S.C.§ 523(a)(6)

69. Lever repeats and realleges every allegation set forth m paragraphs 1 through 68 of this Complaint.

70. Section 523(a)(6) of the Bankruptcy Code provides, in pertinent part:

>    (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1238(b) of this title does not discharge an individual debtor from any debt—
>
>    (4) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

71. As set forth above, the Debtors made the Material Misrepresentations knowledge of their falsity or reckless disregard or gross recklessness as to their truth.

72. The Debtors made the Material Misrepresentations to Lever with the intent to deceive Lever.

73. Lever reasonably believed the Debtors' representations to be true, was deceived thereby, and acted in reasonable reliance upon these Material Misrepresentations.

74. Lever suffered losses as the proximate result of the Debtors making the Material Misrepresentations.

75. The debt, including attorneys' fees, costs, and expenses, from the Debtors' willful and malicious injury, committed in respective individual capacities and on behalf of the Costas Auto, to Lever's interest in the proceeds from the sale of the vehicles is a nondischargeable debt of the Debtors pursuant to 11 U.S.C. § 523(a)(6).

**WHEREFORE**, Lever seeks:

a) A determination that the debt, including attorneys' fees, costs, and expenses, from the money, property, and/or extensions of credit the Debtors, in their respective individual capacities and on behalf of Costa Auto, obtained from Lever by false pretenses, false representations, and/or actual fraud is a nondischargeable debt of the Debtors pursuant to 11 U.S.C. § 523(a)(2)(A);

b) A determination that the debt, including attorneys' fees, costs, and expenses, from the Debtors' fraud or defalcation while acting in a fiduciary capacity is a nondischargeable debt of the Debtors pursuant to 11 U.S.C. § 523(a)(4);

c) A determination that the debt, including attorneys' fees, costs, and expenses, from the Debtors' willful and malicious injury to the proceeds from the sale of the vehicles is a nondischargeable debt of the Debtors pursuant to 11 U.S.C., § 523(a)(6); and

d) All other proper relief as is just in the circumstances.

Dated: January 13, 2023

**DUANE MORRIS LLP**

*/s/ Drew S. McGehrin*
Drew S. McGehrin, Esq.
30 S. 17th Street
Philadelphia, PA 19103
Telephone: (215) 979-1000
Facsimile: (215) 979-1020
Email: DSMcGehrin@duanemorris.com

*Attorneys for Vero Finance Technologies, Inc.*