UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
NEWARK DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BAV AUTO, L.L.C, | ) | Case No. 22-17933-JKS |
| | ) | Chapter 11, Subchapter V |
| Debtor. | ) | |
| | ) | |
| | ) | |
| ALEXANDRE J. DACOSTA, and | ) | Case No. 22-18303-JKS |
| VIVIANNE C. ANTUNES, | ) | Chapter 11, Subchapter V |
| | ) | |
| Debtors. | ) | |
| | ) | |

**OBJECTION OF AUTOMOTIVE FINANCE CORPORATION TO
SMALL BUSINESS DEBTORS' JOINT PLAN OF REORGANIZATION**

Automotive Finance Corporation ("AFC"), by counsel, submits its objection to the *Small Business Debtors' Joint Plan of Reorganization* (the "Plan") [DE 40 in Case No. 22-17933-JKS, [DE 53 in Case No. 22-18303-JKS] filed joint by BAV Auto, L.L.C. ("BAV") and Alexandre J. Dacosta ("Dacosta") and Vivianne C. Antunes ("Antunes," and together with Dacosta the "Individual Debtors"). In support of its objection, AFC states as follows:

**I. Jurisdiction and Venue**

1. The Court has jurisdiction over the Plan and this Objection pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a contested matter pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure, and a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. Venue of this bankruptcy case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. General Background
### a. Procedural History

4. On October 6, 2022, BAV filed a voluntary petition under Subchapter V of Chapter 11 of the Bankruptcy Code.

5. On October 19, 2022, the Individual Debtors filed a joint petition under Chapter 13 of the Bankruptcy Code. On December 20, 2022, the Chapter 13 case was converted to one under Subchapter V of Chapter 11 of the Bankruptcy Code.

6. On November 15 and 16, 2022, the Individual Debtors and BAV filed motions in their respective cases seeking the joint administration of their bankruptcy cases. Those motion have not yet been decided.

7. BAV and the Individual Debtors filed the Plan on January 4, 2023.

### b. Basis for AFC's Interest

8. On or about January 9, 2019, BAV executed a Demand Promissory Note and Security Agreement (as amended or modified from time to time, the "Note"), pursuant to which BAV promised to pay AFC $450,000.00, or such greater or lesser principal amount as may be advanced by AFC pursuant thereto, together with interest. A true and accurate copy of the Note is attached as **Exhibit 1**.

9. Antunes is the sole member of BAV, and Dacosta was the operations manager of BAV. On or about January 9, 2019, in connection with the Note, each of the Defendants executed an Unconditional and Continuing Guaranty pursuant to which they guaranteed the full and prompt payment of all obligations of BAV to AFC under the Note and any other agreement, as amended, supplemented, or modified. A true and accurate copy of the Guaranty is attached to the Note as Exhibit C.

10. Under the terms of the Note and to secure BAV's present and future obligations to AFC under that note and any other instrument, guaranty, or other document, BAV granted AFC a security interest in substantially all of its assets, including inventory, then owned or thereafter acquired. Under the terms of the Note and to secure BAV's present and future obligations to AFC under that note and any other instrument, guaranty, or other document, BAV also granted AFC a purchase money security interest in all vehicles, parts, and equipment financed by AFC thereunder. AFC properly perfected and maintained its security interests in the assets of BAV by making the appropriate UCC filings with the UCC Section of the Department of Revenue for the State of New Jersey. True and accurate copies of AFC's UCC filings are attached as **Exhibit 2**.

11. Prepetition, BAV requested that AFC advance it money and/or extend it credit under the Note to finance vehicle inventory, and AFC in fact advanced money to BAV and/or extended BAV credit under the Note for that purpose. Neither BAV nor the Individual Debtors paid all amounts due and owing to AFC in accordance with the terms of the Note, and BAV and the Individual Debtors were and are in default under the Note. The amount due and owing from BAV and the Individual Debtors to AFC under the Note is approximately $437,938.90.

12. BAV is no longer operating and has not operated since its Subchapter V case was commenced. Plan, at § 1.7. According to BAV, it remains in possession of one vehicle purchased by BAV and financed by AFC under the Note: a 2011 Infiniti M37 (the "Secured Vehicle").

13. AFC asserts a properly perfected blanket lien on all assets of BAV, including its vehicle inventory; the priority of that lien is unclear. AFC asserts a properly perfected, first priority security interest in the Secured Vehicle and is in possession of the title to that vehicle.

14. On December 15, 2022, AFC filed proof of claim no. 11 in the BAV case asserting a secured claim in all assets of BAV in the amount of $437,938.90. No objection has been asserted to this claim.

15. On December 22, 2022, AFC filed proof of claim no. 19 in the Individual Debtors' case asserting an unsecured claim in the amount of $423,573.09. No objection has been asserted to this claim.

16. On December 22, 2022, AFC also filed proof of claim no. 20 in the Individual Debtors' case asserting a secured claim in the amount of $24,015.86 arising out of the sale by BAV to Dacosta of a 2013 Porsche Cayenne. No objection has been asserted to this claim.

17. Under the Plan, AFC holds a secured claim and is the sole member of impaired Class 6, and is also the holder of a general unsecured claim in impaired Class 14.

18. AFC has submitted its Class 6, Class 14, and unclassified ballots voting against the Plan.

### III. AFC's Objections

19. A nonconsensual Subchapter V plan may be confirmed only if it satisfies all of the requirements of 11 U.S.C. § 1129(a) other than subsections (8), (10), and (15), and "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1191(b).[1]

20. With respect to secured claims, the fair and equitable requirement of Subchapter V incorporates Section 1129(b)(2)(A) of the Bankruptcy Code. 11 U.S.C. § 1191(c)(1). To satisfy the fair and equitable requirement for unsecured claims, a debtor under a Subchapter V plan must, at a minimum, commit all projected disposable income earned during the life of the plan to make plan payments or ensure that the value of the property to be distributed under the

---

[1] Unless otherwise noted, all statutory references are to 11 U.S.C. §§ 101—1532 (the "Bankruptcy Code").

plan is not less than the amount of that disposable income, and establish that it will be able to make all plan payments. 11 U.S.C. §§ 1191(c)(2), (3).

21. It is the debtor's burden in a Chapter 11 case to prove the applicable elements of Section 1129, including that a plan is fair and equitable, by a preponderance of the evidence. *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 616 n.23 (Bankr. D. Del. 2001). Subchapter V has not altered this burden. *See*, *e.g.*, *In re Abri Health Servs., LLC*, Case No. 21-30700 (SGJ), 2021 Bankr. LEXIS 2946, at *4-5 (Bankr. N.D. Tex. Oct. 26, 2021).

22. Because the Plan does not satisfy the requirements of Section 1129 and is not fair and equitable with respect to AFC's secured or unsecured claim in accordance with Section 1191, it cannot be confirmed.

**a. The Plan Is An Improper Consolidation of the Debtors' Estates**

23. BAV and the Individual Debtors have requested the joint administration of their bankruptcy cases. Joint administration, which is permitted by Rule 1015(b) of the Federal Rules of Bankruptcy Procedure, is "an administrative convenience so that a party need not file identical pleadings in two different bankruptcy cases." *In re Nuclear Imaging Sys., Inc.*, 260 B.R. 724, 728 n.6 (Bankr. E.D. Pa. 2000). Substantive consolidation, on the other hand, which the debtors have not sought, "'is neither authorized nor prohibited by this rule since the propriety of consolidation depends on substantive considerations and affects the substantive rights of the creditors of different estates.'" *In re Stone & Webster*, 286 B.R. 532, 539 (Bankr. D. Del. 2002) (quoting Fed. R. Bankr. P. 1015 Advisory Committee's Note).

24. As explained below, the Plan's treatment of claims against BAV and the Individual Debtors effectuates a substantive consolidation of these Subchapter V cases without any consideration for the rights of creditors. Because the debtors have not sought substantive

5

consolidation and that relief is neither authorized under Rule 1015 nor appropriate under the facts of these cases, the Plan does not satisfy Section 1129(a)(1) and cannot be confirmed.

### b. By Providing for the Joint Treatment of Claims, The Plan Does Not Satisfy The Best Interests Test of Section 1129(a)(7)

25. The "best interests" test of Section 1129(a)(7) requires each creditor in an impaired class to either accept the plan or receive a distribution that has a present value at least equal to what that creditor would receive if the debtor were liquidated under Chapter 7. This involves a liquidation analysis.

26. BAV's liquidation analysis suggests that unsecured creditors of BAV would receive no distribution in a Chapter 7 liquidation. Plan, at Ex. E. The Individual Debtors' liquidation analysis suggests that unsecured creditors of the Individual Debtors would share pro rata in a distribution pool of $164,193.70. *Id*. Under the Plan, unsecured creditors of both BAV and the Individual Debtors will share in a distribution pool of $200,000. Plan, at § 2.2(C).

27. Only "Allowed Claims" are entitled to payment under the Plan. Plan, at *Summary of the Plan and Distributions to Creditors*; § 2.3. As defined in the Plan, an "Allowed Claim" is "[a]ny claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order." There have been no untimely claims filed late with leave of the Bankruptcy Code. Accordingly, only claims for which a timely proof of claim was filed are "Allowed Claims" entitled to payment under the Plan.

28. In the absence of a joint plan, creditors who assert claims only against BAV would receive no distribution; under the joint Plan, those creditors will be entitled to share in a

distribution pool funded solely by the Individual Debtors, even though they do not have allowed claims against the Individual Debtors.

29. While there are several creditors that filed timely proofs of claim asserting claims against both BAV and the Individual Debtors arising out of the same obligation, there are almost $475,000 of claims that were filed only against BAV by creditors who do not assert the same claim against the Individual Debtors. Those include:

    a. Fox Capital Group, Inc. filed Claim No. 13 in BAV's case asserting a secured claim against BAV in the amount of $278,525, but did not file a proof of claim in the Individual Debtors' case. This claim has been placed in Class 7 under the Plan and will be treated as an unsecured claim entitled to share in the pro rata distribution to unsecured creditors. Plan, at § 2.2.

    b. River Capital Partners, LLC filed Claim No. 12 in BAV's case asserting a secured claim against BAV in the amount of $40,763.80, but did not file a proof of claim in the Individual Debtors' case. This claim has been placed in Class 7 under the Plan and will be treated as an unsecured claim entitled to share in the pro rata distribution to unsecured creditors. Plan, at § 2.2.

    c. Manheim Remarketing, Inc. filed Claim No. 9 in BAV's case asserting an unsecured claim against BAV in the amount of $62,180.00, but did not file a proof of claim in the Individual Debtors' case. This is a Class 14 general unsecured claim entitled to share in the pro rata distribution to unsecured creditors. Plan, at § 2.2.

    d. Capital One N.A. filed Claim No. 5 in BAV's case asserting an unsecured claim against BAV in the amount of $7,000.00 arising out of an account ending in 6231, but did not file a proof of claim in the Individual Debtors' case on the same account. This is a Class 14 general unsecured claim entitled to share in the pro rata distribution to unsecured creditors. Plan, at § 2.2.

    e. The Internal Revenue Service filed Claim No. 4 in BAV's case asserting an unsecured priority claim against BAV in the amount of $20,075.33, but did not file a proof of claim in the Individual Debtors' case. This is an unclassified claim entitled to payment in full on the Effective Date from funds provided by the Individual Debtors. Plan, at § 2.1.

    f. JPMorgan Chase Bank, N.A. filed Claim No. 3 in BAV's case asserting an unsecured claim against BAV in the amount of $62,690.95 arising out of an account ending in 8018, but did not file a proof of claim in the Individual Debtors' case on the same account. This is a Class 14 general unsecured claim entitled to share in the pro rata distribution to unsecured creditors. Plan, at § 2.2.

30. In addition, the Plan proposes to pay the Class 13 claim of Camilo A. Quintero in full (approximately $22,000) out of funds provided by the Individual Debtors. Plan, at § 2.2(C). It is not entirely clear, but it appears that this is a claim against BAV only, and in any event no proof of claim was filed in either the BAV case or the Individual Debtors' case asserting this claim.

31. The Plan also provides for payment in full of the administrative claims in BAV's case of its attorneys and Subchapter V trustee, which would not be allowed or entitled to payment in a non-joint case of the Individual Debtors.

32. AFC timely filed a proof of claim against both BAV (Claim No. 11) and the Individual Debtors (Claim Nos. 19 and 20). In a hypothetical liquidation of BAV, AFC would receive no distribution on account of its unsecured claim. In a hypothetical liquidation of the Individual Debtors, however, AFC would share in an unsecured distribution pool of $164,193.70. Because the Plan's joint treatment of claims provides for either full or partial payment of almost $500,000 of claims asserted only against BAV (approximately $475,000 of claims filed against BAV only; the $22,000 claim of Camilo A. Quintero; and an unknown amount to satisfy administrative claims in the BAV case) from funds provided by the Individual Debtors, AFC is necessarily receiving less under the Plan than it would in a hypothetical Chapter 7 liquidation of the Individual Debtors. As a result, the Plan does not satisfy Section 1129(a)(7) and cannot be confirmed under Section 1191.

### c. By Not Permitting AFC to Credit Bid, The Plan Does Not Satisfy the Fair and Equitable Requirement of Section 1191(c)(1) or 1129(b)(2)(A)(ii)

33. The standard for the fair and equitable treatment of a class of secured claims in a Subchapter V plan is found in Section 1191(c)(1), which incorporates Section 1129(b)(2)(A). "A

8

Chapter 11 plan confirmed over the objection of a 'class of secured claims' must meet one of three requirements [of 11 U.S.C. § 1129(b)(2)(A)] in order to be deemed 'fair and equitable' with respect to the nonconsenting creditor's claim." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 643 (2012).

34. In this case, the Plan proposes the sale of BAV's vehicle inventory free and clear of liens, with the proceeds to be "distributed to the claimant toward satisfaction of the lien on or before the Effective Date. To the extent that the proceeds from such sale are insufficient to satisfy the lien, the deficiency balance will be treated as a general unsecured claim." Plan, at § 2.2(A). AFC has a properly perfected, first priority lien on the vehicle it financed under the Note that is still in BAV's possession (the Secured Vehicle). By virtue of its blanket lien, AFC also has a properly perfected lien in BAV's entire vehicle inventory, the priority of which is uncertain.[2]

35. AFC concedes that Section 1129 permits a debtor to sell collateral free and clear of liens pursuant to a plan over the objection of a secured creditor without regard to Section 363(f), including the requirement that the sale price be sufficient to satisfy all liens in the collateral. What Section 1129 requires in that situation, however, is compliance with the credit bid provision of Section 363(k). 11 U.S.C. § 1129(b)(2)(A)(ii).

36. Because the Plan does not provide that AFC can protect itself as a secured creditor by credit bidding under Section 363(k) on the Secured Vehicle and/or the entirety of

---

[2] Because vehicles owned by BAV are "goods" under Article 9 of New Jersey's Uniform Commercial Code, AFC's blanket lien attaches to vehicles financed by other lenders. Similarly, because they are also "inventory" under the Uniform Commercial Code, the only way for a creditor to perfect a lien in those vehicles is by filing a financing statement. To the extent competing lenders did not perfect security interests in BAV's vehicle inventory by filing a UCC financing statement, AFC's lien would be superior to the liens, if any, of those lenders. *See* N.J. STAT. 12A §§ 9-102(a)(44), 9-102(a)(48), 9-311(d).

9

BAV's vehicle inventory, the Plan does not satisfy the fair and equitable requirement of Section 1129(b)(2)(A)(ii), incorporated by Section 1191(c)(1), and cannot be confirmed.

### d. By Not Providing Information on the Proposed Balloon Payment or Creditor Remedies in the Event of Default, the Plan Does Not Satisfy the Fair and Equitable Requirement of Section 1191(c)(3)

37. Throughout the five-year life of the Plan, Class 14 unsecured claims will receive a pro rata share of $200,000 from the Individual Debtors. In the first 24 months, payments will total $24,000; in the next 35 months, the Individual Debtors will make payments of $52,500. Those payments total $76,500, and in month 60 the Individual Debtors will make a balloon payment of $123,500. Plan, at § 2.2(C).

38. Section 1191(c)(3) contains the feasibility requirements for a Subchapter V plan, and requires that a debtor be able to make all payments under a plan, or alternatively show a "reasonable likelihood" that it will be able to. To that end, a "plan must include financial projections that demonstrate the debtor's ability to make payments." *In re Channel Clarity Holdings LLC*, Case No. 21-bk-07972, 2022 Bankr. LEXIS 2408, at *15 (Bankr. N.D. Ill. Jul. 19, 2022).

39. According to the Plan, Dacosta "has received an employment offer to work at Cars by AJ, a newly formed use-car agency" for $750 per week, and Antunes "has accepted an employment offer with Atlas Refinery as a bookkeeper." Plan, at § 1.9. According to Exhibit C to the Plan, this will result in $1,092 of funds "available for monthly plan payments," or $65,520 over the five-year life of the Plan. There is no indication in the Plan how the Individual Debtors will obtain more than 113-times the amount of their available monthly income to make the

balloon payment in month 60 or that it is reasonably likely that they will be able to. Because the Individual Debtors have not provided information sufficient to establish that they will be able to make all plan payments, the Plan does not satisfy Section 1191(c)(3)(A) or (B)(i), is not fair and equitable, and cannot be confirmed.

40. In addition, Section 1191(c)(3)(B)(ii) requires a nonconsensual plan to contain appropriate remedies for creditors in the event a debtor defaults on payments under a Subchapter V plan. That includes "specific protections for unsecured creditors who are forced to forgo some of the standard protections of a typical chapter 11 case when debtors elect to proceed under subchapter V. To assert that creditors can pursue remedies under applicable law if Debtor should default is a toothless remedy." *Id*. at *45. In this case, the Plan provides no remedies whatsoever in the event of default. Accordingly, the Plan does not satisfy Section 1191(c)(3)(B)(ii), is not fair and equitable, and cannot be confirmed.

### IV. Conclusion

41. For the foregoing reasons, AFC objects to confirmation of the Plan.

Dated: January 27, 2023

/s/ *Donna L. Thompson, Esq.*
DONNA L. THOMPSON
Attorney for Plaintiff
*PHYSICAL ADDRESS:*
1442 Lakewood Road
Manasquan, NJ  08736
*SEND ALL MAIL:*
PO Box 679
Allenwood, NJ  08724
732-292-3000 Phone
732-292-3004 Fax
Donna.thompson@dlthompsonlaw.com