| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br><br>**Caption in compliance with D.N.J. LBR 9004-1(b)**<br>NORGAARD O'BOYLE<br>184 Grand Avenue<br>Englewood, NJ 07631<br>(201) 871-1333<br>Attorneys for Debtor-in-Possession<br>*By: John O'Boyle (JO – 6337)*<br>   *joboyle@norgaardfirm.com*<br>   *Steven D. Pertuz (SDP - 5632*<br>   *spertuz@pertuzlaw.com* | Chapter 11<br>(Subchapter V Small Business)<br><br><br>Hon. John K. Sherwood |
| In re:<br><br>   ALEXANDRE DACOSTA and<br>   VIVIANNE ANTUNES,<br><br>                    Debtors. | Case No.  22-18303 JKS<br><br>(Jointly Administered)[1] |

## JOINTLY ADMINISTERED SMALL BUSINESS DEBTORS'
## SECOND MODIFIED JOINT PLAN OF REORGANIZATION

This Second Modified Joint Plan of Reorganization is presented to you to inform you of the proposed Plan for restructuring the debts of the Jointly Administered Debtors BAV Auto, L.L.C. (the Debtor in Case No. 22-17933 JKS), and Alexandre Dacosta & Vivianne Antunes, (the Debtors in Case No. 22-18303 JKS), and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY _____.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY _____. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESSES:**

---

[1] The jointly administered Debtors are Alexandre Dacosta and Vivianne Antunes, having SSNs with the last four digits of 2325 and 0411, respectively, and BAV Auto, L.L.C., having a TIN with the last four digits 7479.

**Steven D. Pertuz, Esq.**
**Law Offices of Steven D. Pertuz, LLC**
**111 Northfield Avenue, Ste. 304**
**West Orange, NJ  07304**

**John O'Boyle, Esq.**
**Norgaard, O'Boyle & Hannon**
**184 Grand Avenue**
**Englewood, NJ 07631**

**A  HEARING  ON  THE  CONFIRMATION  OF  THE  PLAN  IS  SCHEDULED  FOR
_____ at _____ IN COURTROOM No. 3D AT:**

**United States Bankruptcy Court**
**King Federal Building**
**50 Walnut Street**
**Newark, NJ 07102**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

April 3, 2023

Steven D. Pertuz, Esq.
Law Offices of Steven D. Pertuz, LLC
111 Northfield Avenue, Ste. 304
West Orange, NJ  07304
(973) 669-8600
*Counsel to BAV Auto, L.L.C.*

Norgaard O'Boyle & Hannon
184 Grand Avenue
Englewood, NJ 07631
(201) 871-1333
*Counsel to Alexandre Dacosta*
    *& Vivianne Antunes*

# **TABLE OF CONTENTS**

Summary of the Plan and Distributions to Creditors                                    3

ARTICLE 1 – History of the Business Operations of the Debtor                          4
    1.1    Nature of the Debtor's Business                                       4
    1.2    History of Business Operations of the Debtor                          4
    1.3    Filing of the Debtor's Chapter 11 Case                                5
    1.4    Legal Structure and Ownership                                         5
    1.5    Debtor's Assets                                                       5
    1.6    Debtor's Liabilities                                                  6
    1.7    Current and Historical Financial Conditions                          8
    1.8    Events Leading to the Filing of the Bankruptcy Case                   9
    1.9    Significant Events During the Bankruptcy Case                         9
    1.10   Projected Recovery of Avoidable Transfers                            10

ARTICLE 2 – The Plan                                                                 10
    2.1    Unclassified Claims                                                  11
        A.    Administrative Expenses                                  11
        B.    Priority Tax Claims                                      12
    2.2    Classes of Claims and Equity Interests                               13
        A.    Classes of Secured Claims                                13
        B.    Classes of Priority Unsecured Claims                     17
        C.    Classes of General Unsecured Claims                      17
        D.    Classes of Equity Interest Holders                       21
    2.3    Estimated Number and Amount of Claims Objections                     21
    2.4    Treatment of Executory Contracts and Unexpired Leases                22
    2.5    Means for Implementation of the Plan                                 22
    2.6    Post-confirmation Management                                         23
    2.7    Tax Consequences of the Plan                                         23
    2.8    Projections in Support of Debtor's Ability to
        Make Payments Under the Proposed Plan                          24

ARTICLE 3 – Feasibility                                                              24
    3.1    Ability to Initially Fund Plan                                       24
    3.2    Ability to Make Future Payments and Operate
        Without Further Reorganization                                 24

ARTICLE 4 – Liquidation Analysis                                                     24

ARTICLE 5 – Discharge                                                                25

ARTICLE 6 – General Provisions                                                       25
    6.1    Title to Assets                                                      26
    6.2    Binding Effect                                                       26
    6.3    Severability                                                         26
    6.4    Retention of Jurisdiction by the Bankruptcy Court                    26
    6.5    Captions                                                             26
    6.6    Modification of Plan                                                 26
    6.7    Final Decree                                                         26

ARTICLE 7 – Attachments                                                             27

ARTICLE 8 – Frequently Asked Questions                                              27

ARTICLE 9 – Definitions                                                             30

## <u>SUMMARY OF THE SECOND MODIFIED PLAN AND</u>
## <u>DISTRIBUTIONS TO CREDITORS</u>

The Debtors, BAV Auto L.L.C. ("BAV"), Alexandre J. Dacosta and Vivanne C. Antunes (the "Individual Debtors") (BAV and the Individual Debtors are collectively the "Debtors"), propose the Second Modified Plan set forth herein.

The Debtors propose to pay all allowed Administrative and Priority Claims in full on the Effective Date of the Plan.

The Debtors propose to surrender the vehicles and other property of BAV on or before the Effective Date to the holders of the claims secured by such property in satisfaction of such secured claims.  To the extent that the value of the property surrendered on account of an allowed claim is less than the allowed amount of the claim, the balances shall be treated as general unsecured claims under Bankruptcy Code Sec. 506(a).

The Debtors propose to repay the allowed Claim of JP Morgan Chase, which is secured by a mortgage covering the Individual Debtors' residence, and the allowed Claim of Bank of America, which is secured by a lien covering the Individual Debtors' 2020 BMW X3, in compliance with the notes, mortgage and/or other loan documents forming the basis of the claims.

The Debtors propose to treat the allowed Claims of Thrift Investment Corp., which are secured by liens covering the Individual Debtors' interests in a 2008 Lamborghini and a 2017 Porsche Cayenne, by surrendering the vehicles to the lienholder.  To the extent that the values of the surrendered vehicles are less than the amounts claimed, the balance(s) shall be treated as (a) general unsecured claim(s) under bankruptcy Code Sec. 506(a).

The Debtors propose to reject any executory contracts and unexpired leases and to treat the resulting claims as general unsecured claims.

The Debtors propose to treat all other allowed claims against BAV and the Individual Debtors, including the deficiency claims of the holders of allowed claims secured by property of BAV, as general unsecured claims under Bankruptcy Code Sec. 506(a).

The Individual Debtors will distribute the amount of $250,000.00 over a sixty-month period toward the holders of general unsecured claims; the holders of such claims will share in the fund *pro rata*.  The Debtors estimate that the holders of general unsecured claims will receive distributions of approximately 7.5% of their allowed claims.

The Individual Debtors propose to provide the three creditors that have initiated adversary proceedings for exceptions to discharge with options to accept consent judgements and repayment schedules providing for payment of 20% of their allowed claims to resolve the actions.

## ARTICLE 1
## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTORS

### 1.1.    Nature of the Debtors' Businesses.

BAV is a single member limited liability company created under the laws of the State of New Jersey on August 23, 2011.  The sole purpose of creating the LLC was to operate a used car dealership under the trade name, Costa's Auto Gallery with a primary business location of 1829 State Highway Route 1, Rahway, NJ.  A secondary location for vehicle inventory was located at 361 South Broad Street, Elizabeth, NJ.

When the business was operating, it employed 4 full-time employees and had the capacity to store approximately fifty cars on its lots.  Vivanne C. Antunes is the sole member of BAV; its operations manager is Alexandre J. Dacosta.  BAV's primary market was the sale of used, non-luxury vehicles to its broad range of customers.

The individuals Alexandre Dacosta and Vivianne Antunes are husband and wife.  Although Vivianne Antunes is the sole member of the LLC, she was never employed by BAV or drew any salary or other income from BAV.  After 2020, Alexandre Dacosta's income dropped substantially with the onset of the COVID-19 Pandemic.  Vivianne Antunes worked as a bookkeeper earning a salary of approximately $45,000.00 annually until her employer terminated its business in May, 2022.  Between May, 2022 and January 2023 she has been unable to work as she was expecting a child.

### 1.2.    History of Business Operations of the Debtors.

BAV has been in the used car business since August 2011 with its primary business location of 1829 State Highway Route 1, Rahway, NJ.  It offered mid-level used vehicles to customers in the Union County area and also offered its customers financing options with select lenders that it partnered with.

As is customary in the used car business, BAV utilized various floorplan lenders to purchase vehicles at auction to maintain its inventory and meet the vehicle demands of its customers. The floorplan lenders would be paid at the time a vehicle was sold and the lender would thereafter release the title to the vehicle to the debtor.  At any given time, BAV would maintain floorplan financing with six or more floorplan lenders during normal business operations.  The floorplan lenders would typically require the personal guarantees of the Individual Debtors.

Between the years of 2011 and 2019, BAV generated sufficient income to pay the expenses of operating itself and to make required debt service to its floorplan lenders, but in January of 2020, the onset of the global Covid-19 pandemic changed the business landscape entirely.  BAV was forced to shut down entirely for over two months in the early stages of the pandemic, then strict guidelines were imposed by the state to ensure that social distancing safety measures were followed.  When the business was able to reopen full time, the volume of customers was dramatically reduced, and sales revenue suffered.  Operating expenses and debt continued to increase which forced BAV to seek quicker and higher risk financing with merchant cash advance

lenders entering the picture to cover the revenue shortfall.  The belief that this was a temporary fix until sales improved proved to be a bad decision that started a chain of events that the Debtors simply could not recover from.

### 1.3    Filing of the Debtors' Chapter 11 Cases.

On October 6, 2022, BAV filed a petition for relief under subchapter V of Chapter 11 of the Bankruptcy Code.  On October 19, 2022 the Individual Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code  and thereafter moved to convert the case to subchapter V of Chapter 11.  An order authorizing conversion and the filing of a joint plan was entered on December 20, 2022.

### 1.4.    Legal Structure and Ownership.

BAV is a single member limited liability company created under the laws of the State of New Jersey on August 23, 2011.  The sole purpose of creating the LLC was to operate a used car dealership under the trade name, Costa's Auto Gallery, with a primary business location of 1829 State Highway Route 1, Rahway, NJ.  A secondary location for vehicle inventory was located at 361 South Broad Street, Elizabeth, NJ.  Vivanne C. Antunes is the sole member of BAV and its operations manager is Alexandre J. Dacosta.

### 1.5.    Debtors' Assets.

The following is a summary of the Debtors' assets and their value as of the petition date:

BAV:

| | |
|---|---|
| Bank Deposits | $     500.00 |
| Accounts Receivable  (over 90 days) | $ 12,789.00 |
| Deposits/prepayments with Floorplan Lenders | $ 54,000.00 |
| Office Equipment & Furniture | $   1,000.00 |
| Vehicle Inventory (per appraisal report attached as Exhibit A) | $111,150.00 |

Alexandre Dacosta & Vivianne Antunes

| | |
|---|---|
| Real Property – Residence: 80 Columbia Avenue Kearny, NJ (per appraisal report attached as Exhibit B) | $435,000.00 |
| Vehicles: 2020 BMW X3 | $ 50,000.00 |

5

|  |  |
|---|---|
| 2008 Lamborghini Gallardo Coupe | $ 95,000.00 |
| 2013 Porsche Cayenne | $ 15,617.00 |
| 1988 BMW 325i | $ 15,000.00 |
|  |  |
| Household items: |  |
| Household furnishings | $ 3,000.00 |
| TV & computer equipment | $ 1,000.00 |
| Clothing | $ 500.00 |
|  |  |
| Financial Assets: |  |
| Cash & deposits | $143,900.00 |
| Term Life Insurance | $ 0.00 |
|  |  |
| Other: |  |
| Personal Injury Settlement | $ 13,000.00 |

## 1.6.   Debtors' Liabilities.

**BAV AUTO L.L.C. - Secured claims (Includes All Listed Claims
As Secured But Are Undersecured Or Are To Be Reclassified.
The Below Liabilities Are Subject To Be Updated, If Necessary,
Prior To Confirmation.**

| Claimant and Collateral Description | Asserted Amount |
|---|---|
| XL Funding f/k/a Auction Credit Enterprises, LLC - Vehicles | $157,193.00 |
| Automotive Finance Corp. – Vehicles (Floorplan) | $437,938.90 |
| Cloudfund, LLC - Receivables | $ 90,000.00 |
| Dealer Capital Group, Inc. – Vehicles (Floorplan) | $140,000.00 |
| Fox Business Funding - Receivables | $278,525.00 |
| Kinetic Advantage, Inc. - Vehicle | $180,611.66 |
| Lever Auto Financing (Vero) - Vehicles (Floorplan) | $274,844.15 |
| Proventure Capital - Receivables | $150,000.00 |
| River Capital Partners, LLC - Receivables | $ 40,763.80 |
| Westlake Flooring Services, Inc. – Vehicles (Floorplan) | $149,885.13 |
| CFG Merchant Solutions - Receivables | $351,967.00 |

**BAV AUTO L.L.C. – Unsecured Claims
The Below Liabilities Are Subject To Be Updated,
If Necessary, Prior To Confirmation.**

| | |
|---|---|
| Internal Revenue Service (Priority) | $ 27,000.85 |
| Internal Revenue Service (General unsecured) | $ 2,515.26 |
| 131 Union Street, LLC | $341,681.92 |
| Manheim Remarketing, Inc. | $ 62,180.00 |
| Nextgear Capital, Inc. | $187,077.85 |
| American Express National Bank | $ 19,000.00 |

| | |
|---|---|
| Capital One N.A. | $ 7,000.00 |
| Santander Bank N.A. | $ 98,405.15 |
| Chase Card | $ 60,000.00 |
| Olympic Payroll Services | $ 900.00 |
| Ernesto Gonzalez (Landlord) | Undetermined |
| Jersey Express, LLC (Landlord) | Undetermined |
| Camilo A. Quintero | $ 24,001.18 |
| Dylan Kemper | Undetermined |
| Stephen R. Pereira | $ 14,149.03 |
| Thomas Venderli | $ 20,000.00 |

**Alexandre Dacosta & Vivianne Antunes – Secured Claims
(Includes All Listed Claims As Secured But Are Undersecured
Or Are To Be Reclassified. The Below Liabilities Are Subject
To Be Updated, If Necessary, Prior To Confirmation.**

| **Claimant and Collateral Description** | **Asserted Amount** |
|---|---|
| JP Morgan Chase Bank, NA (Mortgage on Residence) | $182,285.97 |
| Bank of America (Auto Loan) | $ 53,740.22 |
| Thrift Investment Corp (Auto Loan) | $ 95,570.42 |
| Thrift Investment Corp (Auto Loan) | $ 33,000.00 |

**Alexandre Dacosta & Vivianne Antunes – Unsecured Claims**

**The Below Liabilities Are Subject To Be Updated,
If Necessary, Prior To Confirmation.**

All secured and unsecured claims asserted against BAV, described above,
plus the following:

| | |
|---|---|
| Prosperum Capital Partners (Arsenal Funding) | $ 59,600.00 |
| Papaya – Resurgent Capital (Cross River Bank) | $ 39,681.16 |
| JP Morgan Chase (Credit Card) | $ 5,262.93 |
| JP Morgan Chase (Credit Card) | $ 18,233.25 |
| JP Morgan Chase (Credit Card) | $ 1,652.50 |
| Best Egg – Resurgent Capital | $ 22,125.61 |
| Capital One Bank | $ 3,618.20 |
| Banker's Healthcare Group – Pinnacle Bank | $ 7,276.92 |
| Banker's Healthcare Group | $ 67,800.61 |
| Trinitas Regional Medical Center | $ 4,071.38 |
| Discover Bank | $ 37,838.85 |
| Discover Bank (Credit Card) | $ 6,713.00 |
| Discover Personal Loans | $ 21,826.00 |
| Santander Bank | $ 8,195.84 |
| Lending Club Bank | $ 39,082.61 |

| | |
|---|---:|
| Jefferson Capital Systems – Synchrony Bank | $ 2,396.46 |
| Ally Financial | $ 24,830.48 |
| Barclays Bank Delaware | $ 4,049.00 |
| Barclays Bank Delaware | $ 3,540.00 |
| Chase Amazon | $ 1,692.57 |
| Clara Maas Medical Center | $ 1,550.00 |
| Jewelers Reserve/CBNA | $ 2,850.00 |
| Juniper Mastercard | $ 7,618.52 |
| Lightstream | $ 13,290.48 |
| Lightstream | $ 97,883.88 |
| SOFI Bank | $ 40,000.00 |
| SYNCB/Care Credit | $ 1,400.00 |

## 1.7.    <u>Current and Historical Financial Conditions.</u>

BAV had gross sales of approximately $3,097,293.00 in 2019, but sales revenue and income declined in 2020 and in 2021 (although gross deposits may have increased due to the merchant cash advances and other lender proceeds deposited into the business bank account). In 2020, the Covid-19 pandemic continued to depress BAV's sales, particularly in the late spring, when it could not operate at all. The Debtors have been consulting with several accountants on retention options and to prepare their 2020 through 2022 tax returns.

As set forth above, between the years of 2011 and 2019, BAV generated sufficient income to pay the expenses of operating itself and to make required debt service to its floorplan lenders, but in January of 2020, the onset of the global Covid-19 pandemic changed the business landscape entirely. BAV was forced to shut down entirely for over two months in the early stages of the pandemic, then strict guidelines were imposed by the state to ensure social distancing safety measures were followed. When the business was able to reopen full time, the volume of customers was dramatically lower and sales revenue suffered. Operating expenses and debt continued to increase, forcing BAV to seek quicker and higher-risk financing to cover the revenue shortfall, with merchant cash advance lenders entering the picture.

By the petition date, it was evident that the business needed additional cash to maintain operations and pay its existing debt as various lenders on any given day were taking thousands of dollars in ACH payments from the business account. Cash reserves were depleted and BAV's efforts to obtain needed financing fell short as negotiations with an existing floorplan lender, Vero Finance Technologies, Inc., could not be finalized and the business could not continue. A review of the debtor's vehicle sale history showed that approximately 65 vehicles were sold "out of trust" and New Jersey Division of Motor Vehicle Commission suspended and thereafter revoked BAV's dealer license on or around October 28, 2022. BAV continues to work with the New Jersey Division of Motor Vehicle Commission, Business Licensing Services Bureau, in full cooperation in order to ensure all affected customers receive the titles to their purchased vehicles.

Vivianne Antunes, the sole member of BAV AUTO L.L.C. has never received a salary or income as an officer or employee of the debtor. Alexandre Dacosta, the operations manager, previously received a salary of $1,500.00, gross biweekly, until September 20, 2022. This was the last payroll date for all employees. There have been no business operations since the petition date of October

6, 2022.

## 1.8.    Events Leading to the Filing of the Bankruptcy Cases.

In furtherance of the statements above, in late September, 2022, BAV sought counsel to assess business operations and options available to it considering the dire circumstances.  Loan defaults were continuing, and floorplan lenders were threatening repossession of its vehicles.  On the morning of October 6, 2022, Automotive Finance Corp. arrived at the main business location and repossessed seven (7) vehicles. On the same day, BAV sought bankruptcy protection in the District of New Jersey, Newark Vicinage under Chapter 11, Subchapter V, bearing case number 22-17933.

Immediately after the filing, Lever Auto Financing filed an *ex-parte* action in the Superior Court of New Jersey against the Individual Debtors and the creditor 131 Union Street, LLC, through which it sought to restrain them from use or transfer of their accounts.  This prompted the Individual Debtors to file their petition for relief under Chapter 13 of the Bankruptcy Code on October 19, 2022, commencing case no. 22-18303.

## 1.9.    Significant Events During the Bankruptcy Cases.

On or about October 11, 2022, the Office of the United States Trustee appointed Mark Politan, Esq. to serve as Subchapter V Trustee in the BAV case. On October 28, 2022, the Bankruptcy Court entered an order authorizing the retention of Steven D. Pertuz, LLC as counsel to BAV.

On November 16, 2022, a motion to convert the Individual Debtors' case and for joint administration of the two cases was filed; the Office of the United States Trustee objected.  By order dated December 20, 2022, the Court converted the Individual Debtor's case to Chapter 11, subchapter V and authorized the filing of a joint plan (*ECF No. 40*).  The final hearing on the motion for joint administration will be held on January 17, 2023 at 10:00 am.

On December 14, 2022, a motion for relief from the automatic stay regarding ten vehicles repossessed by Automotive Finance Corp. on the petition filing date was granted with BAV AUTO L.L.C.'s consent.

On January 4, 2023, BAV and the individual Debtors filed a proposed Joint Plan of Reorganization in each of the separate cases (*ECF No. 53*).  The confirmation hearing for this plan is scheduled for March 14, 2023.  However, several parties field objections to confirmation of the first Joint Plan, and it was not accepted by any class of creditors.  The Debtors are proposing the within First Modified Joint Plan in place of the first Joint Plan.

On January 17, 2023, XL Funding f/k/a Auction Credit Enterprises, LLC filed a motion for relief from the Automatic Stay to recover possession of  certain vehicles from BAV's possession.  Neither Debtor opposed the motion, but in February, 2023 the court directed the movant to notify all secured creditors of the motion and to reschedule the hearing.

In January, 2023, Automotive Finance Corporation, Vero Finance Technologies, Inc. and XL Funding, LLC each filed complaints to except their claims against the Individual Debtors from discharge in their case.  The Individual Debtors have not yet answered any of the complaints. The

9

three plaintiffs have agreed to extend the time for the Individual Debtors to answer until mid-March, 2023.

On March 2, 2023, the Stater of New Jersey Division of taxation filed a proof of claim, in which it asserted a priority claim of $101,505.88 based on estimated tax liabilities. The Debtors dispute the amount of the claim. In late March, 2023, the jointly administered Debtors applied to retain George Guzman, CPA of Guzman Consulting Group, LLC to serve as their accountants in the case. The Debtor anticipate that with the accountant's assistance, they will file any delinquent tax returns and arrange for a reduction of the amount of the claim.

In March, 2023, the Individual Debtors accepted an offer for the purchase of their 1988 BMW automobile for $15,000.00. On March 28, 2023, the Bankruptcy Court approved the proposed sale, and approved the Individual Debtors' retention of their exemptions of $4,400.00 from the sales proceeds. The Debtors anticipate selling the car prior to confirmation of the Plan and contributing the net amount of $10,600.00 toward the plan's funding.

Since the commencement of the case, Alexandre Dacosta has received an employment offer to work at Cars by AJ, a newly formed used-car agency in which none of the Debtors hold any interest. He expects to begin work in March, 2023, and earn approximately $750.00 per week.

Vivianne Antunes delivered her baby boy on January 3, 2023. This expands the family and is expected to affect the budget.

Vivanne Antunes became employed with Atlas Refinery as a bookkeeper in February, 2023; she expects annual compensation of $60,000.00.

### 1.10. <u>Projected Recovery of Avoidable Transfers.</u>

The Debtors do not intend to pursue preference, fraudulent conveyance, or other avoidance actions.


## ARTICLE 2

## <u>THE JOINT PLAN (THE "PLAN")</u>

The Debtors' Joint Plan (the "Plan") must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-

half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

## 2.1.   **Unclassified Claims.**

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

A.    Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1.    If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2.    If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3.    Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 case. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | $0.00 | To be paid in full on the Effective Date, or according to the terms of the obligation, if later. |
| Administrative Tax Claim | $0.00 | To be paid in full on the Effective Date. |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | $0.00 | To be paid in full on the Effective Date, or according to the terms of the obligation, if later. |
| Subchapter V Trustee's fees and expenses | $TBD | Upon application under § 330 and after Bankruptcy Court approval, to be paid in full upon the later of the Effective Date, or (2) allowance of the administrative expense. |
| Allowed fees and expenses of Debtor's professionals | $TBD | Upon application under § 330 and after Bankruptcy Court approval, to be paid in full upon the later of the Effective Date, or (2) allowance of the administrative expense, or (3) according to a separate agreement between the Debtor and professional. |
| Clerk's Office fees | $0.00 | To be paid in full on the Effective Date. |
| Other Administrative Expenses | $0.00 | To be paid in full on the Effective Date or according to separate written agreement. |

B.    Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| Internal Revenue Service, Business Tax (1120) | $27,000.85 | N/A | In the event that any priority tax claims are allowed against any of the Debtors, the Debtors will pay the allowed claims in full on the later of the Effective Date or, in the event that the Debtors object to the amount of the claim, the date on which the claim is allowed. |
| State of New Jersey Division of Taxation | $101,505.88 | N/A | In the event that any priority tax claims are allowed against any of the Debtors, the Debtors will pay the allowed claims in full on the late of the Effective Date or, in the event that the Debtors object to the amount of the claim, the date on which the claim is allowed. |

**2.2**     **Classes of Claims and Equity Interests.**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A.      Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code.  If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtors' secured prepetition Claims and their proposed treatment under the Plan:

13

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 1 | XL Funding f/k/a Auction Credit Enterprises | No | Yes | BAV to surrender all of its rights in any property securing the Class 1 Creditor's claim.  To the extent that the value of the surrendered property is insufficient to satisfy the claimant's lien(s), the deficiency balance will be treated as a general unsecured claim.  In the event that the claimant holds no lien or interest in any of the property, the claim shall be treated as wholly unsecured. |
| 2 | Dealer Capital Group, Inc. | No | Yes | BAV to surrender all of its rights in any property securing the Class 2 Creditor's claim.  To the extent that the value of the surrendered property is insufficient to satisfy the claimant's lien(s), the deficiency balance will be treated as a general unsecured claim.  In the event that the claimant holds no lien or interest in any of the property, the claim shall be treated as wholly unsecured. |
| 3 | Kinetic Advantage, Inc. | No | Yes | BAV to surrender all of its rights in any property securing the Class 3 Creditor's claim.  To the extent that the value of the surrendered property is insufficient to satisfy the claimant's lien(s), the deficiency balance will be treated as a general unsecured claim.  In the |

| | | | | |
|---|---|---|---|---|
| | | | | event that the claimant holds no lien or interest in any of the property, the claim shall be treated as wholly unsecured. |
| 4 | Lever Auto Financing (Vero) | No | Yes | BAV to surrender all of its rights in any property securing the Class 4 Creditor's claim.  To the extent that the value of the surrendered property is insufficient to satisfy the claimant's lien(s), the deficiency balance will be treated as a general unsecured claim.  In the event that the claimant holds no lien or interest in any of the property, the claim shall be treated as wholly unsecured. |
| 5 | Westlake Flooring Services, Inc. | No | Yes | BAV to surrender all of its rights in any property securing the Class 5 Creditor's claim.  To the extent that the value of the surrendered property is insufficient to satisfy the claimant's lien(s), the deficiency balance will be treated as a general unsecured claim.  In the event that the claimant holds no lien or interest in any of the property, the claim shall be treated as wholly unsecured. |
| 6 | Automotive Finance Corp. | No | Yes | BAV to surrender all of its rights in any property securing the Class 6 Creditor's claim.  To the extent that the value of the surrendered property is insufficient to satisfy the claimant's lien(s), the deficiency balance will be |

| | | | | |
|---|---|---|---|---|
| | | | | treated as a general unsecured claim.  In the event that the claimant holds no lien or interest in any of the property, the claim shall be treated as wholly unsecured. |
| 7 | Cloudfund, LLC; Fox Business Funding, LLC; Proventure Capital; River Capital Partners, LLC; and CFG Merchant Solutions (asserting liens on receivables and other personal property) | No | No | Debtor has determined that the property in which the Class 7 Creditors may hold liens has no net value.  Debtor will abandon such property on or before the Effective Date and will treat the entirety of all Class 7 Claims will be treated as unsecured. |
| 8 | JP Morgan Chase Bank (Mortgage on Individual Debtor's residence) | No | No | Individual Debtors proposed to cure $317.78 prepetition arrears on the Effective Date of the Plan, and to continue to make all mortgage payments as they come due. |
| 9 | Bank of America (Loan secured by 2020 BMW X3) | No | No | Individual Debtors to continue to make all loan payments as they come due |
| 10 | Thrift Investment Corp. (Loan secured by 2008 Lamborghini Gallardo) | No | Yes | Individual Debtors to surrender all of their rights in any property securing the Class 10 Creditor's claim.  To the extent that the value of the surrendered property is insufficient to satisfy the claimant's lien(s), the deficiency balance will be treated as a general unsecured claim. |
| 11 | Thrift Investment Corp. (Loan secured by 2013 Porsche Cayenne) | No | Yes | Individual Debtors to surrender all of their rights in any property securing the Class 11 Creditor's claim.  To the extent that |

| | | | | the value of the surrendered property is insufficient to satisfy the claimant's lien(s), the deficiency balance will be treated as a general unsecured claim. |
|---|---|---|---|---|

**B.**    Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The Debtors do not believe that any party holds any unsecured claim entitled to priority under Bankruptcy Code Secs. 507(a)(1), (4), (5), (6), or (7). In the event that such a claim is asserted, however, the Debtors places such claims in Class 3 and proposes to treat them as follows:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 12 | Unsecured Claims entitled to Priority under Bankruptcy Code Secs. 507(a)(1), (4), (5), (6), or (7) | Unimpaired | Debtors propose to pay the full amount of necessary to repay the claims in cash on the Effective Date. |

**C.**    Class[es]of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class[es] 4 through 6, which contain general unsecured Claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 13 | General Unsecured Claims<br><br>(including deficiency claims of creditors holding liens on property of BAV) | Impaired | Claimants to share *pro rata* in a total fund of $250,000.00.  The Individual Debtors will contribute that amount over a five-year term in the following manner:<br><br>1. On the effective date of the Plan, the Individual Debtors will contribute $125,00000 of their prepetition savings and the $10,600.00 net sales proceeds realized from the sale of their 1988 BMW (for the total contribution of |

| | | | |
|---|---|---|---|
| | (except qualified claimants electing treatment as described in Classes 14 – 16, below) | | $135,600) to pay all claims required to be paid in full on the Effective Date (including all Administrative and Priority Claims).  To the extent that the amount necessary to satisfy these claims is less than the amount contributed, the excess will be distributed toward the fund for payment of Class 13 Claims.<br><br>3.  Commencing 30 days after the Effective Date, for a period of 60 months, the Individual Debtors will make the following monthly payments toward the fund for payment of Class 13 Claims:<br><br>-   Months 1 – 24:  $1,000.00 per month;<br>-   Months 25-59: $1,500.00 per month;<br>-   Month 60: Balloon payment of the balance due to complete the fund.<br><br>*Estimated percentage of claims paid: 7.5%* |
| 14 | General Unsecured Claim of Automotive Finance Corporation<br>(Opt-in class for resolution of discharge suit) | Impaired | In the event that the holder of the Class 14 Claim elects the following treatment, in addition to the distribution available to it as the holder of a Class 13 Claim, the Class 14 Claimant shall agree to resolve its adversary proceeding for an exception to the Individual Debtors' discharge, and shall receive distributions on account of its allowed claim, as follows:<br><br>1.  The Claimant's General Unsecured Claim shall be Allowed in the amount equal to the total of the two claims filed by the Claimant (Proof of Claims 19 and 20 in the Individuals' case), less any amounts recovered by the Claimant through resale of cars repossessed by or surrendered to the Claimant, and any amounts of BAV's deposits or reserves not previously credited against the claim amounts.<br><br>2.  On the Effective Date, Claimant shall receive a Consent Judgment in the amount of $225,000.00, which amount shall be excepted from discharge pursuant to Bankruptcy Code |

| | | | sec. 523(b). Claimant shall hold the Consent Judgment in escrow, and shall be required to forbear from execution on such judgment unless and until the Individual Debtors default under the terms of the Plan.<br><br>3. After completion of all payments to the holders of Class 13 Claims, the Individual Debtors shall continue to make monthly payments of $750.00 to the Claimant until the total amount received by the Claimant under the Plan (including distributions received under Class 13 and Class 14) equals 20% of the amount of its Allowed General Unsecured claim.<br><br>4. Should the Individual Debtors default on their obligations under the Plan to the Class 13 or Class 14 Claimants, the Class 14 Claimant shall be permitted to enforce the Consent Judgment. Should the Individual Debtors complete pay the Claimant 20% of the amount of its Allowed General Unsecured Claim, the Consent Judgment shall be void. |
| 15 | General Unsecured Claim of Vero Finance Technologies, Inc. (Opt-in class for resolution of discharge suit) | Impaired | In the event that the holder of the Class 15 Claim elects the following treatment, in addition to the distribution available to it as the holder of a Class 13 Claim, the Class 15 Claimant shall agree to resolve its adversary proceeding for an exception to the Individual Debtors' discharge, and shall receive distributions on account of its allowed claim, as follows:<br><br>1. The Claimant's General Unsecured Claim shall be Allowed in the amount of the claim filed by the Claimant (Proof of Claim 13 in the Individuals' case), less any amounts recovered by the Claimant through resale of cars repossessed by or surrendered to the Claimant, and any amounts of BAV's deposits or reserves not previously credited against the claim amounts.<br><br>2. On the Effective Date, Claimant shall receive a Consent Judgment in the amount of |

| | | | |
|---|---|---|---|
| | | | $137,500.00, which amount shall be excepted from discharge pursuant to Bankruptcy Code sec. 523(b).  Claimant shall hold the Consent Judgment in escrow, and.  shall be required to forbear from execution on such judgment unless and until the Individual Debtors default under the terms of the Plan.<br><br>3.  After completion of all payments to the holders of Class 13 Claims, the Individual Debtors shall continue to make monthly payments of $465.00 to the Claimant until the total amount received by the Claimant under the Plan equals 20% of the amount of its Allowed General Unsecured Claim.<br><br>4.  Should the Individual Debtors default on their obligations under the Plan to the Class 13 or Class 15 Claimants, the Class 15 Claimant shall be permitted to enforce the Consent Judgment.  Should the Individual Debtors complete pay the Claimant 20% of the amount of its Allowed General Unsecured Claim, the Consent Judgment shall be void. |
| 16 | General Unsecured Claim of XL Funding, LLC (Opt-in class for resolution of discharge suit) | Impaired | In the event that the holder of the Class 16 Claim elects the following treatment, in addition to the distribution available to it as the holder of a Class 13 Claim, the Class 16 Claimant shall agree to resolve its adversary proceeding for an exception to the Individual Debtors' discharge, and shall receive distributions on account of its allowed claim, as follows:<br><br>1.  The Claimant's General Unsecured Claim shall be Allowed in the amount of the claim filed by the Claimant (Proof of Claim 32 in the Individuals' case), less any amounts recovered by the Claimant through resale of cars repossessed by or surrendered to the Claimant, and any amounts of BAV's deposits or reserves not previously credited against the claim amounts.<br><br>2.  On the Effective Date, Claimant shall receive a Consent Judgment in the amount of |

|  |  |  | $87,000.00, which amount shall be excepted from discharge pursuant to Bankruptcy Code sec. 523(b).  Claimant shall hold the Consent Judgment in escrow., and Claimant shall be required to forbear from execution on such judgment unless and until the Individual Debtors default under the terms of the Plan.<br><br>3.  After completion of all payments to the holders of Class 13 Claims, the Individual Debtors shall continue to make monthly payments of $285.00 to the Claimant until the total amount received by the Claimant under the Plan equals of 20% of the amount of its Allowed General Unsecured Claim.<br><br>4.  Should the Individual Debtors default on their obligations under the Plan to the Class 13 or Class 16 Claimants, the Class 16 Claimant shall be permitted to enforce the Consent Judgment.  Should the Individual Debtors complete pay the Claimant 20% of the amount of its Allowed General Unsecured Claim, the Consent Judgment shall be void. |
|  |  |  |  |

D.      Class[es] of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are Equity Interest holders. In a partnership, Equity Interest holders include both general and limited partners. In a limited liability company ("LLC"), the Equity Interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The following chart sets forth the Plan's proposed treatment of the class[es] of Equity Interest holders:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 17 | Alexandre Dacosta and Vivianne Antunes | Unimpaired | Debtors will retain all equity interest in personal property of individual debtors. |

**2.3.    Estimated Number and Amount of Claims Objections.**

The Debtors may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If

and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

| Class | Number of Claims Objected To | Amount of Claims Objected To |
|---|---|---|
| Priority Tax Claims - Unclassified | 2 | $128,506.73 |

## 2.4.    Treatment of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraph below explains the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and  the impact such intentions would have on the other parties to the contracts.

[ X] Rejection of Executory Contracts and unexpired Leases.

To the extent that parties identified below hold Executory Contracts or Unexpired Leases with any of the Debtors, they shall be rejected. Rejection means that the Debtors have elected to not continue to perform the obligations under such contracts or unexpired leases, and shall not cure defaults of the type that must be cured under the Bankruptcy Code, if any.

| Party | Item Leased | Treatment |
|---|---|---|
| Jersey Express LLC | Commercial Lot at 1829 State Highway Route 1, Rahway, NJ | Rejected |
| Ernesto Gonzalez | Commercial Lot at 361 South Broad Street, Elizabeth, NJ | Rejected |

If you object to the rejection of your unexpired lease or executory contract, you must file and serve your objection to the rejection within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

## 2.5.    Means for Implementation of the Plan.

The Debtor BAV will fund the payments to Classes 1 through 6 by surrendering the vehicle inventory remaining in its possession on or before the Effective Date pursuant to Bankruptcy Code Sec. 363(b) and (f).

The Individual Debtors Alexandre Dacosta and Vivianne Antunes will fund the payments to Classes 12, and 13, as well as all administrative and priority claims, by (1) contributing the net sales proceeds realized from the sale of the Individual Debtors' 1988 BMW vehicle; (2)

contributing $125,000.00 from the Individual Debtors' prepetition deposit accounts; and (3) contributing a portion of the Individual Debtors' postpetition and post-confirmation income. If necessary, they will fund the balloon payment that comes due in the 60th month of the plan by contributing the proceeds from the sale or refinance of their residence, or from withdrawals or loans from a retirement plan.

If the Class 14, 15 or 16 Claimants elect the treatment provided for those classes, the Individual Debtors will fund the payments to the accepting class(es) by contributing a portion of their post-confirmation income.

The Individual Debtors will fund the payments to Classes 8 and 9 through contributions of a portion of their postpetition and post-confirmation income.

The Individual Debtors will surrender the property securing the claims of the Class 10 and 11 Claimants.

On Confirmation of the Plan, BAV will abandon pursuant to Bankruptcy Code Sec. 554 all of its tangible and intangible property not otherwise dedicated by this Plan for distribution to the holders of claims, including, without limitation, licenses, receivables, furniture, fixtures and equipment.

On Confirmation of the Plan, all property of the Individual Debtors, tangible and intangible, including, without limitation, real property, vehicles, licenses, furniture, fixtures and equipment, will revert, free and clear of all claims and equitable interests except as provided in the Plan, to the Individual Debtors. The Individual Debtors expect to have sufficient cash on hand to make the payments required on the Effective Date.

If the Plan is confirmed under §1191(a), payments to Creditors provided for in the Plan will be made by the Trustee pursuant to §1194(a). Once the Trustee's service is terminated under § 1183(c), the Debtor shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

If the Plan is confirmed under section § 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Trustee shall make all Plan payments to creditors under the Plan.

## 2.6.   **Post-Confirmation Management.**

The Post-Confirmation Officers/Managers of the Debtors, and their compensation, shall be as follows:

    N/A

## 2.7.   **Tax Consequences of the Plan.**

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

Tax consequences to the Debtors: The Debtors may incur tax liability on income received post-confirmation and utilized to fund the plan.

Tax Consequences to the Creditors: The Debtors CANNOT and DO NOT make any representation to the holders of claims regarding the of the Plan. The Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

## 2.8.   **Projections in Support of Debtors' Ability to Make Payments Under the Proposed Plan**

The Individual Debtors have provided a projected monthly budget supporting their proposal to fund the payments required by the Plan after the Effective Date.  The budget is attached hereto as Exhibit C.

## ARTICLE 3

## FEASIBILITY

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors, unless such liquidation or reorganization is proposed in the Plan.

## 3.1.   **Ability to Initially Fund Plan**.

The Debtors believe that they will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date.  To make the payments under the Plan on the Effective Date to the Administrative, Priority, Class 13 and Class 14 Creditors, the Individual Debtors have approximately $150,000.00 in deposit accounts.

## 3.2.   **Ability to Make Future Plan Payments And Operate Without Further Reorganization**.

The Debtors must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan.

They have provided projected financial information. Those projections are listed in Exhibit C.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## ARTICLE 4

## LIQUIDATION ANALYSIS.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached

hereto as Exhibit D.

# ARTICLE 5

## DISCHARGE

If the Plan is confirmed under Code Sec. 1191(a), on the Confirmation Date of this Plan, the Debtors will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in Sec. 1141(d) of the Bankruptcy Code

If the Plan is confirmed under Sec. 1191(b), as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtors a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

> (1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or
> (2) if applicable, of the kind specified in section 523(a) of this title.

Whether the Plan is confirmed under Code Sec. 1191(a) or 1191(b), if one or more of the Class 14, Class 15 or Class 16 Claimants elect treatment under those classes, any consent judgment provided by the Individual Debtors to the Claimant shall be excepted from discharge under Code Sec. 523(a).

# ARTICLE 6

## GENERAL PROVISIONS

### 6.1.   Title to Assets.

If a plan is confirmed under Sec. 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtors, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under Sec. 1191(b), property of the estate includes, in addition to the property specified in Sec. 541, all property of the kind specified in that section that the Debtors acquire, as well as earnings from services performed by the Debtors, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtors shall remain in possession of all property of the estate.

**6.2.** __**Binding Effect.**__

If the Plan is confirmed, the provisions of the Plan will bind the Debtors and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**6.3.** __**Severability.**__

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**6.4.** __**Retention of Jurisdiction by the Bankruptcy Court.**__

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

**6.5.** __**Captions.**__

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**6.6.** __**Modification of Plan.**__

The Debtors may modify the Plan at any time before confirmation of the Plan pursuant to Sec. 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtors may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Sec. 1191(b), the Debtors may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**6.7.** __**Final Decree.**__

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtors, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree

to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 7

## <u>ATTACHMENTS</u>

The following documents accompany the Plan [check those applicable, and list any other attachments here]:

[X] Appraisal of BAV vehicle inventory, annexed as Exhibit A
[X] Appraisal of the individual Debtor's residence, annexed as Exhibit B.
[X] Individual Debtors' projected monthly budget, annexed hereto as Exhibit C.
[X] Liquidation Analysis, annexed as Exhibit D.

## ARTICLE 8

## <u>FREQUENTLY ASKED QUESTIONS</u>

**What Is the Debtor Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Section 2.2 lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization [or Liquidation] Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as

proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization [or Liquidation]?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPAIRED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I am in an Impaired Class?** Section 2.2 of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is_____.Ballots should be mailed to the following addresses:

Norgaard O'Boyle & Hannon
184 Grand avenue
Englewood, NJ 07631

Law Offices of Steven D. Pertuz, LLC
111 Northfield Avenue, Ste. 304
West Orange, NJ  07304

**How Do I Determine When and How Much I Will Be Paid?** In Section 2.2, the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

## ARTICLE 9
## DEFINITIONS

**9.1.**     The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan.  The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**9.2.**     **Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**9.3.**     **Administrative Convenience Class:** A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4.**     **Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.5**     **Administrative Tax Claim**: Any tax incurred pursuant to  Section 503(b)(1)(B) of the Code.

**9.6.**     **Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7.**     **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8.**     **Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

**9.9.**    **Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10.**    **Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11.**    **Bankruptcy Court**: The United States Bankruptcy Court for the District of New Jersey.

**9.12.**    **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**9.13.**    **Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14.**    **Chapter 11 Case(s)**: The above-captioned cases under chapter 11 of the Bankruptcy Code in which BAV Auto, L.L.C. and Alexandre Dacosta and Vivianne Antunes are the Debtors-in-Possession.

**9.15**    **Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16.**    **Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17.**    **Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**9.18.**    **Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.19.** **Confirmation Hearing**: The hearing to be held on_____, 2023 to consider confirmation of the Plan.

**9.20.** **Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.21.** **Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.22.** **Debtor** and **Debtor-in-Possession**: BAV Auto, L.L.C., Alexandre Dacosta and Vivianne Antunes, the debtors-in-possession in these Chapter 11 Cases.

**9.23.** **Disputed Claim:** Any claim against one or more of the Debtors pursuant to Section 502 of the Code that the Debtors has in any way objected to, challenged or otherwise disputed.

**9.24.** **Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.25.** **Effective Date**: Pursuant to D.N.J. LBR 3020-1, the effective date of a chapter 11 plan is 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

**9.26.** **Equity Interest**: An ownership interest in the Debtor.

**9.27.** **Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.28.** **Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.29.** **IRC**: The Internal Revenue Code

**9.30.** **Petition Date**: For BAV, October 6, 2022, the date it filed its petition for bankruptcy relief. For the Individual Debtors, October 19, 2022, the date they filed their petition for bankruptcy relief.

**9.31.** **Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.32.** **Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.33.** **Reorganized Debtor**: The Debtors after the Effective Date.

**9.34.** **Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtors with the Bankruptcy Court listing liabilities and assets.

**9.35.** **Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.36.** **Trustee**: Mark Politan, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.37.** **Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 cases which is not a secured claim.

Date: 4/3/2023                              */s/ Vivianne Antunes*
                                          Vivianne Antunes, Individually and as sole
                                          sole member and President of BAV Auto, LLC


                                          */s/ Alexandre Dacosta*
                                          Alexandre Dacosta, Individually

23