# RETAINER AGREEMENT

**I. The Parties.** This Retainer Agreement ("Agreement") is made effective as of March 21 2023, by and between:

**Service Provider**: Guzman Consulting Group LLC with a street address of 540 Fairview Ave., Colonia, New Jersey, 07067 ("Service Provider"),

AND

**Client**: Alex Da Costa / Bav Auto LLC with a street address of 80 Columbia Ave., Kearny, New Jersey, 07032 ("Client").

**II. Services.** Service Provider agrees to provide the following Services: Accounting Consultation Services and Business Tax Preparation services for 3 years ("Services").

**III. Term.** The Services shall commence on March 25 2023 and end upon the Services being completed in accordance with this Agreement.

**IV. Compensation.** In consideration for the Services provided, the Service Provider is to be paid in the following manner:

**Hourly Rate**

Per Hour $300.00

**V. Payment Interval.** Service Provider shall be paid, in accordance with Section IV, in the following manner: 50% of total amount up front & 50% remaining balance paid upon completion.

**VI. Retainer.** The Client is required to make a single retainer payment as part of this Agreement as an advance for future services. The retainer amount shall be $6,300.00 and considered non-refundable to the Client if any portion should unused upon termination of this Agreement.

**VII. Expenses.** The Service Provider shall be responsible for all expenses related to providing the Services under this Agreement. This includes, but is not limited to, supplies, equipment, operating costs, business costs, employment costs, taxes, Social Security contributions and/or payments, disability insurance, unemployment taxes, and any other cost that may or may not be in connection with the Services provided by the Service Provider including out-of-pocket expenses.

**VIII. Disputes.** If any dispute arises under this Agreement, the Service Provider and the Client shall negotiate in good faith to settle such dispute. If the parties cannot resolve such disputes themselves, then either party may submit the dispute to mediation by a mediator approved by both parties. If the parties cannot agree with any mediator or if either party does not wish to abide by any decision of the mediator, they shall submit the dispute to arbitration by any mutually acceptable arbitrator, or the American Arbitration Association (AAA). The costs of the arbitration proceeding shall be borne according to the decision of the arbitrator, who may apportion costs equally or in accordance with any

finding of fault or lack of good faith of either party. If either party does not wish to abide by any decision of the arbitrator, they shall submit the dispute to litigation. The jurisdiction for any dispute shall be administered in the jurisdiction where the Services are being provided.

**IX. Legal Notice**. All notices required or permitted under this Agreement shall be in writing and shall be deemed delivered when delivered in-person, e-mail, or deposited in the United States Postal Service via Certified Mail.

**X. Return of Records**. Upon termination of this Agreement, the Service Provider shall deliver all records, notes, and data of any nature that are in the Service Provider's possession or under the Service Provider's control and that are of the Client's property or relate to Client's business.

**XI. Waiver of Contractual Right**. The failure of either party to enforce any provision of this Agreement shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

**XII. Independent Contractor Status**. The Service Provider, under the code of the Internal Revenue (IRS), is an independent contractor and neither the Service Provider's employees or contract personnel are, or shall be deemed, the Client's employees. In its capacity as an independent contractor, the Service Provider agrees and represents:

a.) Service Provider has the right to perform Services for others during the term of this Agreement;
b.) Service Provider has the sole right to control and direct the means, manner, and method by which the Services required under this Agreement will be performed; Service Provider shall select the routes taken, starting and ending times, days of work, and order the work that performed;
c.) Service Provider has the right to hire assistant(s) as subcontractors or to use employees to provide the Services under this Agreement.
d.) Neither Service Provider nor the Service Provider's employees or personnel shall be required to wear any uniforms provided by the Client;
e.) The Services required by this Agreement shall be performed by the Service Provider, Service Provider's employees or personnel, and the Client will not hire, supervise, or pay assistants to help the Service Provider;
f.) Neither the Service Provider nor the Service Provider's employees or personnel shall receive any training from the Client for the professional skills necessary to perform the Services required by this Agreement; and
g.) Neither the Service Provider nor Service Provider's employees or personnel shall be required by the Client to devote full-time to the performance of the Services required by this Agreement.

**XIII. State and Federal Licenses**. The Service Provider represents and warrants that all employees and personnel associated shall comply with federal, state, and local laws requiring any required licenses, permits, and certificates necessary to perform the Services under this Agreement.

**XIV. Payment of Taxes**. Under this Agreement, the Client shall not be responsible for:

a.) Withholding FICA, Medicare, Social Security, or any other Federal or State withholding taxes from the Service Provider's payments to employees or personnel or make payments on behalf of the Service Provider;
b.) Making Federal and/or State unemployment compensation contributions on the Service Provider's behalf; and

c.) Making payments of taxes incurred while performing the Services under this Agreement, including all applicable income taxes and, if the Service Provider is not a business entity, all applicable self-employment taxes. Upon demand, the Service Provider shall provide the Client with proof that such payments have been made.

**XV. Employees' Compensation.** The Service Provider shall be solely responsible for the following:

a.) Employee Benefits. The Service Provider understands and agrees that they are solely responsible and shall be liable to all benefits that are provided to their employees, including, but not limited to, retirement plans, health insurance, vacation time-off, sick pay, personal leave, or any other benefit provided.
b.) Unemployment Compensation. The Service Provider shall be solely responsible for the unemployment compensation payments on behalf of their employees and personnel. The Service Provider shall not be entitled to unemployment compensation with the Services performed under this Agreement.
c.) Workers' Compensation. The Service Provider shall be responsible for providing all workers' compensation insurance on behalf of their employees. If the Service Provider hires employees to perform any work under this Agreement, the Service Provider agrees to grant workers' compensation coverage to the extent required by law. Upon request by the Client, the Service Provider must provide certificates proving workers' compensation insurance at any time during the performance of the Services.

**XVI. Indemnification.** Service Provider shall release, defend, indemnify, and hold harmless Client and its officers, agents, and employees from all suits, actions, or claims of any character, name, or description including reasonable Service Provider fees, brought on account of any injuries or damage, or loss (real or alleged) received or sustained by any person, persons, or property, arising out of services provided under this Agreement or Service Provider's failure to perform or comply with any requirements of this Agreement including, but not limited to any claims for personal injury, property damage, or infringement of copyright, patent, or other proprietary rights. Client reserves the right to retain whatever funds which would be due to the Service Provider under this Agreement until such suits, action or actions, claim or claims for injuries or damages as aforesaid shall have been settled and satisfactory evidence to that effect furnished.

**XVII. Confidentiality & Proprietary Information.** The Service Provider acknowledges that it will be necessary for the Client to disclose certain confidential and proprietary information to the Service Provider in order for the Service Provider to perform their duties under this Agreement. The Service Provider acknowledges that disclosure to a third (3rd) party or misuse of this proprietary or confidential information would irreparably harm the Client. Accordingly, the Service Provider will not disclose or use, either during or after the term of this Agreement, any proprietary or confidential information of the Client without the Client's prior written permission except to the extent necessary to perform the Services on the Client's behalf.

Proprietary or confidential information includes, but is not limited to:

a.) The written, printed, graphic, or electronically recorded materials furnished by Client for Service Provider to use;
b.) Any written or tangible information stamped "confidential," "proprietary," or with a similar legend, or any information that Client makes reasonable efforts to maintain the secrecy of, business or marketing plans or strategies, customer lists, operating procedures, trade secrets, design formulas,

know-how and processes, computer programs and inventories, discoveries and improvements of any kind, sales projections, and pricing information; and
c.) Information belonging to customers and suppliers of the Client about whom the Service Provider gained knowledge as a result of the Service Provider's Services to the Client.

Upon termination of the Service Provider's Services to the Client, or at the Client's request, the Service Provider shall deliver all materials to the Client in the Service Provider's possession relating to the Client's business. The Service Provider acknowledges any breach or threatened breach of confidentiality under this Agreement will result in irreparable harm to the Client for which damages would be an inadequate remedy. Therefore, the Client shall be entitled to equitable relief, including an injunction, in the event of such breach or threatened breach of confidentiality. Such equitable relief shall be in addition to the Client's rights and remedies otherwise available at law.

Furthermore, proprietary information, under this Agreement, shall include:

a.) The product of all work performed under this Agreement ("Work Product"), including without limitation all notes, reports, documentation, drawings, computer programs, inventions, creations, works, devices, models, works-in-progress and deliverables, will be the sole property of the Client, and Service Provider hereby assigns to the Client all right, title, and interest therein, including, but not limited to, all audiovisual, literary, moral rights and other copyrights, patent rights, trade secret rights, and other proprietary rights therein. Service Provider retains no right to use the Work Product and agrees not to challenge the validity of the Client's ownership in the Work Product;
b.) Service Provider hereby assigns to the Client all right, title, and interest in any and all photographic images and videos or audio recordings made by the Client during Service Provider's work for them, including, but not limited to, any royalties, proceeds, or other benefits derived from such photographs or recordings; and
c.) The Client will be entitled to use the Service Provider's name and/or likeness in advertising and other materials.

**XVIII. Assignment and Delegation**. The Service Provider may assign rights and may delegate duties under this Agreement to other individuals or entities acting as a subcontractor ("Subcontractor"). The Service Provider recognizes that they shall be liable for all work performed by the Subcontractor and shall hold the Client harmless of any liability in connection with their performed work.

The Service Provider shall be responsible for any confidential or proprietary information that is shared with the Subcontractor in accordance with this section. If any such information is shared by the Subcontractor to third (3rd) parties, the Service Provider shall be made liable.

**XIX. Governing Law**. This Agreement shall be governed under the laws located in the State where the Services are being provided.

**XX. Severability**. This Agreement shall remain in effect in the event a section or provision is unenforceable or invalid. All remaining sections and provisions shall be deemed legally binding unless a court rules that any such provision or section is invalid or unenforceable, thus, limiting the effect of another provision or section. In such case, the affected provision or section shall be enforced as so limited.

**XXI. Entire Agreement**. This Agreement, along with any attachments or addendums, represents the entire agreement between the parties. Therefore, this Agreement supersedes any prior agreements,

promises, conditions, or understandings between the Client and Service Provider. This Agreement may be modified or amended if the amendment is made in writing and is signed by both parties.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates written hereunder.

**Service Provider's Signature** _____ Date 3/21/23
Guzman Consulting Group LLC

**Client's Signature** _____ Date 3/29/23
Alex Da Costa / Bay Auto LLC