UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY (NEWARK)

| | | |
|---|---|---|
| IN RE: § | | Chapter 11 |
| § | | |
| BAV AUTO, L.L.C., § | | CASE NO. 22-17933-JKS |
| § | | |
| *Debtor*. § | | |
| § | | |
| § | | |
| ALEXANDRE J. DACOSTA, and § | | Chapter 11 |
| VIVIANNE C. ANTUNES, § | | |
| § | | CASE NO. 22-18303-JKS |
| Debtors. § | | |
| § | | |

**OBJECTION OF XL FUNDING, LLC D/B/A AXLE FUNDING, LLC
F/K/A AUCTION CREDIT ENTERPRISES, LLC TO
SMALL BUSINESS DEBTORS' JOINT PLAN OF REORGANIZATION**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

XL Funding, LLC d/b/a Axle Funding, LLC f/k/a Auction Credit Enterprises, LLC ("XLF"), by counsel, submits its objection to the *Jointly Administered Small Business Debtors' Second Modified Joint Plan of Reorganization* (the "Plan") [Doc. # 105], filed jointly by BAV Auto, L.L.C. ("BAV") and Alexandre J. Dacosta ("Dacosta") and Vivianne C. Antunes ("Antunes," and together with Dacosta the "Individual Debtors"). In support of its objection, XLF states as follows:

### I. JURISDICTION AND VENUE

1. The Court has jurisdiction over the Plan and this Objection pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a contested matter pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure, and a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. Venue of this bankruptcy case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. GENERAL BACKGROUND

### a. Procedural History

4. On October 6, 2022, BAV filed a voluntary petition under Subchapter V of Chapter 11 of the Bankruptcy Code.

5. On October 19, 2022, the Individual Debtors filed a joint petition under Chapter 13 of the Bankruptcy Code. On December 20, 2022, the Chapter 13 case was converted to one under Subchapter V of Chapter 11 of the Bankruptcy Code.

6. On February 13, 2023, the Court entered its Order [Doc. # 81] granting the motions of BAV and the Individual Debtors for joint administration of their respective bankruptcy cases.

7. On January 17, 2023, XLF commenced Adversary Proceeding No. 23-01015-JKS (the "Adversary Proceeding"), seeking a determination that the debt owing to XLF by the Individual Debtors is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6). The Adversary Proceeding remains pending.

8. BAV and the Individual Debtors filed the Plan on April 3, 2023. Under the Plan, XLF holds a secured claim and is the sole member of impaired Class 1, a general unsecured claimant in impaired Class 13, and a general unsecured claimant in impaired Class 16.

### b. Basis for XLF's Interest

9. On or about December 22, 2020, BAV executed a Demand Promissory Note and Security Agreement (as amended or modified from time to time, the "Note"), pursuant to which

10. XLF granted BAV a line of credit for the purpose of purchasing inventory for BAV's used car business. A true and accurate copy of the Note is attached as **Exhibit A.**

11. Upon information and belief, Antunes is the sole member of BAV, and Dacosta was the operations manager of BAV. On or about December 22, 2020, in connection with the Note,

each of the Individual Debtors executed an Unconditional and Continuing Guaranty pursuant to which they guaranteed the full and prompt payment of all obligations of BAV to XLF under the Note and any other agreement, as amended, supplemented, or modified. A true and accurate copy of the Guaranty is attached to the Note as Exhibit B.

12. Pursuant to § 3 of the Note, BAV granted to XLF a security interest in all of BAV's collateral, including all Accounts, Deposit Accounts, General Intangibles, Documents, Instruments, Investment Property, Chattel Paper (including without limitation letters of credit, documents of title, books and records), Inventory (as defined in the Note), whether now existing or acquired and wherever located, Purchase Money Inventory, and all additions, accessions, accessories, replacements, and Proceeds, together with any and all books and records.

13. XLF's security interest in the Collateral is perfected by virtue of a UCC-1 Financing Statement (the "Financing Statement") filed by XLF with the State of New Jersey, Department of the Treasury, Division of Revenue & Enterprise Services, UCC Section on or about February 26, 2021. A true and accurate copy of the Financing Statement is attached hereto and incorporated herein as Exhibit C.

14. Prepetition, BAV requested that XLF advance it money and/or extend credit to BAV under the Note to finance vehicle inventory. Thereafter, XLF advanced money to BAV and/or extended BAV credit under the Note for that purpose. Neither BAV nor the Individual Debtors paid all amounts due and owing to XLF in accordance with the terms of the Note, and BAV and the Individual Debtors were and are in default under the Note. The amount due and owing from BAV and the Individual Debtors to XLF under the Note and the accompanying guarantees is $166,960.00, excluding interest, fees, and costs.

15. Upon information and belief, BAV is no longer operating and has not operated

since its case commenced. Plan, at § 1.7. According to BAV, it remains in possession of the following vehicles (collectively, the "Secured Vehicles"):

| Stock # | Year | Make      | Model   | Last 6 of VIN | Amount Owed |
|---------|------|-----------|---------|---------------|-------------|
| 84      | 2015 | Toyota    | Camry   | 560305        | $12,321.00  |
| 92      | 2011 | Chevrolet | Cruz    | 241979        | $2,497.00   |
| 98      | 2010 | Chevrolet | Equinox | 200502        | $5,126.00   |
| 99      | 2010 | Audi      | A-4     | 015200        | $6,433.00   |
| 101     | 2012 | Subaru    | Impreza | 222834        | $7,983.00   |

16. XLF has been granted relief from the automatic stay in an effort to recover and sell the Secured Vehicles.

17. Beyond the foregoing, XLF asserts a properly perfected blanket lien on all assets of BAV, including its vehicle inventory; the priority of that lien is unclear. XLF asserts a properly perfected, first-priority security interest in the Secured Vehicles.

### III. XLF'S OBJECTIONS

18. A nonconsensual Subchapter V plan may only be confirmed if it satisfies all requirements of 11 U.S.C. § 1129(a), excluding subsections (8), (10), and (15), and "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1191(b).

19. The debtor in a Chapter 11 case bears the burden to prove the applicable elements of Section 1129, including that a plan is fair and equitable, by a preponderance of the evidence. *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 616 n.23 (Bankr. D. Del. 2001). Subchapter V has not altered this burden. *See*, *e.g.*, *In re Abri Health Servs., LLC*, Case No. 21-30700 (SGJ), 2021 Bankr. LEXIS 2946, at *4-5 (Bankr. N.D. Tex. Oct. 26, 2021).

20. Because the Plan does not satisfy the requirements of Section 1129 and is not fair and equitable with respect to XLF's claims in accordance with Section 1191, it cannot be

confirmed.

**A. The Plan Contains an Impermissibly Vague Opt-In Provision**

21.     The standard for the fair and equitable treatment of a class of secured claims in a Subchapter V plan is found in Section 1191(c)(1), which incorporates Section 1129(b)(2)(A). "A Chapter 11 plan confirmed over the objection of a 'class of secured claims' must meet one of three requirements [of 11 U.S.C. § 1129(b)(2)(A)] in order to be deemed 'fair and equitable' with respect to the nonconsenting creditor's claim." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 643 (2012).

22.     The Plan proposes an opt-in provision, under which XLF may elect to settle the Adversary Proceeding in exchange for certain treatment of its Class 16 general unsecured claim. The specifics of the opt-in provision are unclear, and the Plan does not indicate what is to become of XLF's claim and the Adversary Proceeding should it opt-out of the proposed treatment.

23.     XLF does not consent to settlement of the Adversary Proceeding as described by the Plan and, by way of this Objection and its rejection of the Plan, opts out of the treatment as currently proposed.

**B. By Failing to Properly Identify the Specifics of the Proposed Balloon Payment or Creditor Remedies in the Event of Default, the Plan Does Not Satisfy the Fair and Equitable Requirement of Section 1191(c)(3)**

24.     Throughout the five-year life of the Plan, Class 13 unsecured claims will receive a pro rata share of $250,000.00 from the Individual Debtors. In the first 24 months, payments will total $24,000.00; in the next 35 months, the Individual Debtors will make payments of $52,500.00. Those payments total $76,500.00, and in month 60 the Individual Debtors will make a balloon payment of the balance due to complete the fund. Plan, at § 2.2(C).

25.     Section 1191(c)(3) contains the feasibility requirements for a Subchapter V plan,

and requires that a debtor be able to make all payments under a plan, or alternatively show a "reasonable likelihood" that it will be able to. To that end, a "plan must include financial projections that demonstrate the debtor's ability to make payments." *In re Channel Clarity Holdings LLC*, Case No. 21-bk-07972, 2022 Bankr. LEXIS 2408, at *15 (Bankr. N.D. Ill. Jul. 19, 2022).

26. According to the Plan, Dacosta "has received an employment offer to work at Cars by AJ, a newly formed used-car agency" for $750.00 per week, and Antunes "became employed with Atlas Refinery as a bookkeeper in February, 2023; she expects annual compensation of $60,000.00." Plan, at § 1.9. According to Exhibit C to the Plan, this will result in $1,092 of funds "available for monthly plan payments," or $65,520.00 over the five-year life of the Plan. The Individual Debtors also anticipate receiving "the net amount of $10,600.00" from the sale of their 1998 BMW and contributing $125,000.00 from their prepetition deposit accounts to fund the Plan. Plan, at §§ 1.9 and 2.5. However, there is no indication in the Plan how the Individual Debtors will pay the remaining balance of the $128,506.73 in disputed tax claims, along with the balance to unsecured creditors and, ultimately, as settlement of the Adversary Proceeding, after distribution of the $125,000.00 allegedly on deposit. Because the Individual Debtors have not provided information sufficient to establish that they will be able to make all plan payments, the Plan does not satisfy Section 1191(c)(3)(A) or (B)(i), is not fair and equitable, and cannot be confirmed.

27. In addition, Section 1191(c)(3)(B)(ii) requires a nonconsensual plan to contain appropriate remedies for creditors in the event a debtor defaults on payments under a Subchapter V plan. That includes "specific protections for unsecured creditors who are forced to forgo some of the standard protections of a typical chapter 11 case when debtors elect to proceed under subchapter V. To assert that creditors can pursue remedies under applicable law if Debtor should

default is a toothless remedy." *Id*. at *45. In this case, the Plan provides no remedies whatsoever in the event of default. Accordingly, the Plan does not satisfy Section 1191(c)(3)(B)(ii), is not fair and equitable, and cannot be confirmed.

### IV. CONCLUSION

28. For the foregoing reasons, XLFs objects to confirmation of the Plan and prays that any request to confirm the Plan be denied.

Dated: May 16, 2023

**Respectfully Submitted,**

STARK & STARK
Attorneys at Law
100 American Metro Blvd.
Hamilton, NJ 08619
609-791-7022 – Phone
609-895-7395 – Fax

*/s/ Joseph H. Lemkin*
Joseph H. Lemkin, Esq.
NJ Attorney I.D. #056391994
jlemkin@stark-stark.com

*Attorney for XL Funding, LLC*
*d/b/a Axle Funding, LLC*
*f/k/a Auction Credit Enterprises, LLC*